No. 92-116

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN RE THE MARRIAGE OF:

MARILYN ANNE OLSEN,

       Petitioner and Respondent,

   and

RAYMOND CHARLES OLSEN,

       Respondent and Appellant.

FILED

MAR - 5 1993

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

*11:10 A.M.*

APPEAL FROM:  District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Leif B. Erickson, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

          Patrick D. Sherlock, Sherlock & Nardi, Kalispell,
Montana

     For Respondent:

          Katherine R. Curtis, Kaplan & Curtis, Columbia
Falls, Montana


                   Submitted on Briefs:  August 6, 1992

                         Decided:  March 5, 1993

Filed:

                             Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Raymond Olsen (Raymond) appeals the findings of fact, conclusions of law, and order entered in this dissolution of marriage by the District Court for the Eleventh Judicial District, Flathead County. We affirm the District Court.

Raymond raises five issues for our consideration. We rephrase those issues as:

1. Did the District Court require Raymond to pay unreasonable child support?

2. Was the District Court correct in denying Raymond's motion for retroactive modification of a temporary child support, maintenance, and health insurance order?

3. Did the District Court err in requiring Raymond to pay medical insurance and part of the uncovered future medical expenses of his children?

4. Was the District Court's award of maintenance unreasonable?

5. Was the District Court's apportionment of the parties' assets equitable?

Raymond and Marilyn Olsen (Marilyn) were married on June 27, 1971, in Bigfork, Montana. Two children were born to the parties: a daughter, born July 19, 1973; and a son, born July 10, 1975. Raymond and Marilyn separated in February 1990 after Raymond was arrested for sexual assault of their daughter. Raymond plead guilty to one count of sexual assault and was sentenced to sixteen years in prison with six years suspended. Raymond was incarcerated in the Montana State Prison on October 25, 1990.

2

Through Raymond's employment as a truck driver for the Columbia Falls Aluminum Company, and Marilyn's efforts as a homemaker, the parties enjoyed a decent standard of living during their marriage. Their home in Columbia Falls had a market value of $63,500 with no encumbrances. They had accumulated $43,882.33 in a joint money market account at the time of separation. Additionally, they had various items of personal property and liquid assets for a marital estate totaling $156,704. Raymond's employment also provided medical insurance for the family.

After their separation, Marilyn moved the District Court for temporary child support and maintenance. Following a hearing, the District Court ordered Raymond to pay child support of $401.50 per month per child. Raymond was also ordered to pay maintenance in the amount of $200 per month. The order allowed Marilyn to make up any deficiencies in the support and maintenance payments from Raymond's share of the money market account. In addition, approximately one year after their separation, Marilyn obtained employment as a bartender/cocktail waitress. Her net earnings from this job were approximately $1000 per month.

In December 1991, after a bench trial, the District Court entered its findings of fact, conclusions of law and decree of dissolution of marriage. The District Court divided the total marital estate, valued at $156,704, equally between the parties. However, Marilyn actually received $124,341 of the marital estate. The District Court deducted from Raymond's half of the estate, and

3

added to Marilyn's share, Raymond's obligation for child support, maintenance, medical insurance, uncovered future medical expenses and incurred liabilities, for a total addition of $43,289. The District Court ordered the deductions in lieu of cash payments because Raymond would be earning no income while incarcerated. Raymond appeals the decision of the District Court.

I

Did the District Court require Raymond to pay unreasonable child support?

In this appeal, we again address what effect loss of income due to incarceration should have upon a child support obligation. We first addressed this issue in Mooney v. Brennan (1993), \_\_\_\_ Mont. \_\_\_\_, \_\_\_\_ P.2d \_\_\_\_, (Cause No. 92-089, decided March 5, 1993). Mooney involved modification of a child support order which was based upon pre-incarceration income. In the instant case, we decide a similar, although not exactly parallel, issue. Here, we address what effect incarceration should have upon an original child support order arising from a dissolution of marriage. In addition, we determine what effect an inability to earn income due to incarceration for a voluntary criminal act should have upon maintenance and other family support obligations arising from a dissolution of marriage.

In Mooney, this Court determined that incarceration does not constitute a change in circumstances so substantial and continuing as to make the terms of a child support order based upon pre-

4

incarceration income unconscionable. Mooney, Slip op. at 6. We held the District Court was incorrect as a matter of law in ruling that incarceration met the requirements of § 40-4-208(2)(b)(i), MCA, and justified a modification of child support payments because of a resultant loss of income. Mooney, Slip op. at 8.

In reviewing the District Court's findings of fact, the standard of review to be applied is whether the findings are clearly erroneous. In re the Marriage of Eschenbacher (1992), 253 Mont. 139, 142, 831 P.2d 1353, 1355. Our standard of review as to the District Court's conclusions of law is "whether the tribunal's interpretation of the law is correct." Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

Raymond contends the District Court erred in its determination of child support because it failed to "annualize" his income for the immediate two-year period preceding the dissolution of marriage, the last of which he was incarcerated and earned no income. He argues that had the District Court done so, his income over this time frame would have been $18,828, and, therefore, his child support obligation would have been lower. However, Raymond misinterprets the term "annualized income" and merely averages his income over a two-year period.

When an order concerning child support is issued, part of the criteria used in determining the child support obligation requires the district court to determine the support obligation

5

by applying . . . the uniform child support guidelines adopted by the department of social and rehabilitation services pursuant to 40-5-209 . . . .

Section 40-4-204(3)(a), MCA.  In referring to annualized income, the Child Support Guidelines state:

"Annualized income" refers to gross income and deductions from gross income used to derive a figure for net resources available for child support . . . .

Section 46.30.1513(1)(e), ARM (1990).  Income should be annualized to accurately reflect a parent's income producing abilities. Section 46.30.1513(1)(e), ARM (1990).

Raymond supports his argument that his income for the two years immediately preceding his dissolution should have been "annualized" by relying upon the District Court Rules on Child Support.  Under these rules it was recommended that:

All income should be annualized and copies of the last two years' tax returns should accompany financial statements as well as current wage stubs.

District Court Rules on Child Support (1987), 227 Mont. 1, 5. Raymond argues that, had the District Court done this, his child support obligation would have been based upon a net income of $18,828.  This argument fails for three reasons.

First, the very reason it is recommended by the District Court Rules on Child Support that two years of annualized income be examined is:

Without such examination a temporary period of present unemployment or underemployment may indicate an unwarranted low amount of income available for support.

6

District Court Rules on Child Support (1987), 227 Mont. 1, 5 (emphasis added).

Second, under § 40-4-204(3)(a), MCA, which was in effect at the time of this dissolution of marriage, the District Court is required to determine the child support obligation by, inter alia, applying the standards in the Uniform Child Support Guidelines promulgated by the Department of Social and Rehabilitation Services, § 46.30.1501, ARM (1990), et.seq., and not the District Court Rules on Child Support.

Third, where a parent is voluntarily unemployed or underemployed, the District Court may impute income "based upon the parent's ability or capacity to earn net income." Section 46.30.1513(1)(b), ARM (1990) (emphasis added).

The District Court found that Raymond's gross income for 1989, his last full year of employment, was $40,659. Raymond's gross income for 1990, through October, was $42,951. Raymond was ordered to pay a total of $702 per month in child support through May 1992, when his daughter completed high school. Thereafter, Raymond was ordered to pay a total of $452 per month in child support through July 1993, when his son turns eighteen.

In using the $42,951 figure for imputing income upon which child support was based, the District Court reasoned that Raymond's lack of employment was the result of a voluntary criminal act. The District Court imputed income to Raymond and calculated his child support obligation "as though he had continued in his pre-

7

incarceration employment." Raymond contends that while his criminal conduct was voluntary, the resulting unemployment arising from his incarceration was involuntary and unforeseeable under the circumstances. Therefore, Raymond argues, the District Court failed to impute income based upon one year of involuntary unemployment as well as his final year of employment before he was incarcerated. We do not agree.

In Mooney, we held that a criminal should not be offered a reprieve from their child support obligations when we do not do the same for one who becomes voluntarily unemployed. Mooney, Slip op. at 6-7. Furthermore, we held it was the public policy of this state that the "provisions of Title 40, Chapter 4 are to be liberally construed to promote the underlying purposes of the chapter." Mooney, Slip op. at 8. One such purpose requires parents to provide support for their children. Section 40-4-101(4), MCA. We now extend the reasoning in Mooney to the case at bar. We hold under the facts of this case, the District Court's decision to impute income to Raymond for purposes of child support based upon his pre-incarceration income was not clearly erroneous nor incorrect as a matter of law.

II

Was the District Court correct in denying Raymond's motion for retroactive modification of a temporary child support, maintenance, and health insurance order?

Raymond contends the District Court erred as a matter of law in denying his motion for retroactive modification of the temporary

8

order entered on October 18, 1990. He argues that under § 40-4-208(2)(b)(i), MCA, retroactive modification was warranted because his unemployment due to incarceration constitutes a change in "circumstances so substantial and continuing as to make the terms [of the temporary order] unconscionable." Section 40-4-208(2)(b)(i), MCA. We do not agree, and hold the District Court was correct in denying Raymond's motion for retroactive modification of the temporary child support, maintenance, and health insurance order.

The District Court concluded that Raymond's unemployment due to incarceration did not constitute a change in circumstances so substantial and continuing as to make the terms of the temporary order unconscionable. Therefore, a modification under §40-4-208(2)(b)(i), MCA, was not appropriate. We hold this conclusion is correct as a matter of law, and in line with our holding in Mooney.

### III

Did the District Court err in requiring Raymond to pay medical insurance and part of the uncovered future medical expenses of his children?

Raymond next contends the District Court erred in requiring that he pay the medical insurance premiums and a disproportionate share of uncovered future medical expenses for the parties' children. As to the medical insurance, the temporary order required Raymond to provide medical coverage for his children. In its final order, the District Court ordered Raymond to continue to provide medical insurance for his children.

9

Raymond contends health insurance is not mandatory and he should not be required to bear the full brunt of medical insurance because he is no longer employed. In addition, he argues that Marilyn is working and has funds with which to purchase medical insurance.

Under § 40-4-204(4)(b), MCA:

(4) Each district court judgment, decree, or order establishing a final child support obligation under this title . . . must include a provision addressing health insurance coverage in the following cases:

. . .

(b) In the event that health insurance required in a child support judgement, decree, or <u>order</u> becomes unavailable to the party who is to provide it, through loss or change of employment or otherwise, <u>that party must</u>, in the absence of an agreement to the contrary, <u>obtain comparable insurance</u> or request that the court modify the requirement. [Emphasis added.]

At the time the temporary order was entered, Raymond was still employed and had insurance coverage for his children through his employer. When he became incarcerated and unemployed, Raymond lost his medical insurance benefits. After the insurance became unavailable to him, § 40-4-204(4)(b), MCA, required that he obtain comparable insurance. Raymond was incarcerated and had no employment with which to replace the insurance. However, he did have assets in the marital estate as a means to obtain comparable insurance.

The District Court found that $2,775 would be required to cover the cost of medical insurance for the parties' children until

10

they were emancipated. Because Raymond could not purchase insurance, the District Court ordered $2,775 to be deducted from Raymond's share of the marital estate. The District Court reasoned that deducting the insurance obligation was the only reasonable means to insure that Raymond fulfilled his obligation to provide medical insurance. We hold the District Court did not err in requiring Raymond to provide medical insurance.

Raymond also contends the District Court erred in requiring him to pay a disproportionate share of expected uncovered future medical expenses of the parties' children. He argues the future medical expenses are speculative and the parties should split any expenses fifty/fifty rather than seventy-five/twenty-five.

The District Court found that the children had significant medical problems which would necessitate attention and treatment in the future. The District Court also found the expected cost of such expenses, not covered by insurance, to be $1700. The District Court deducted $1350, or 75 percent, of the expected cost from Raymond's share of the marital estate. The District Court derived the 75 percent figure by comparing Raymond's net available resources to the parties' net available resources as a whole. As we have held the District Court did not err in determining the amount of income available for child support, we too hold it was not clearly erroneous for the District Court to find that Raymond was responsible for 75 percent of expected medical expenses not covered by health insurance.

11

IV

Was the District Court's award of maintenance unreasonable?

An award of maintenance may be proper after the District Court has equitably divided the marital estate pursuant to § 40-4-202, MCA, and has properly applied the criteria of § 40-4-203, MCA. Eschenbacher, 831 P.2d at 1355. In the case at bar, the District Court divided the $156,704 marital estate in the amount of $78,352 to each party. Raymond does not contend this division was inequitable. Rather, he contends the District Court should not have awarded Marilyn more than $100 per month in maintenance because she has sufficient employment or assets with which to support herself. We do not agree with this contention.

Under § 40-4-203, MCA, the District Court may grant a maintenance order only if it finds the spouse seeking maintenance:

(a) lacks sufficient property to provide for his reasonable needs; and

(b) is unable to support himself through appropriate employment . . . .

Section 40-4-203(1)(a) and (b), MCA. In addition,

(2) The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, and after considering all relevant facts including:

(a) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

12

(b)     the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(c)     the standard of living established during the marriage;

(d)     the duration of the marriage;

(e)     the age and the physical and emotional condition of the spouse seeking maintenance; and

(f)     the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

Section 40-4-203(2)(a) through (f), MCA.

The District Court ordered Raymond to pay $200 per month in maintenance through July 1993, when the youngest child turns eighteen.    Thereafter, the District Court ordered Raymond to pay $500 per month in maintenance through August 1995.    The total maintenance obligation was $16,500.

Raymond argues that because Marilyn was awarded the house, the silver dollar collection, a 1984 automobile, and the parties' money market account, she had sufficient property to provide for her reasonable needs.    However, for property to be "sufficient property" under § 40-4-203(1)(a), MCA, the property must be income-producing rather than income-consuming.    In re the Marriage of Van Atta (1992), 252 Mont. 310, 313, 829 P.2d 3, 5.    Although it is arguable that the house and the silver dollar collection will produce income due to appreciation in value, they would have to be sold to realize any income production.    These items cannot be considered sufficient property because they will not provide income

13

sufficient for Marilyn's reasonable present needs. Van Atta, 829 P.2d at 5-6. Furthermore, although the money market account will earn interest, Marilyn will have to deplete the funds at a greater rate than interest accrues to meet the needs of herself and the parties' children. After a thorough review of the record, we hold the District Court did not clearly err in finding the property awarded to Marilyn was not sufficient property to provide for her reasonable needs.

Raymond also argues Marilyn has appropriate employment from which she can provide for her reasonable needs. During the marriage, Marilyn enjoyed a reasonably decent standard of living. After the parties separated, because she had no job skills or education greater than a high school diploma, Marilyn took a job as a bartender/cocktail waitress and earned approximately $1000 per month net, with no benefits. The District Court found the reasonable monthly expenses of Marilyn and the two children to be $1600. Furthermore, the District Court found Marilyn was barely able to support herself through her employment much less achieve the standard of living enjoyed during the marriage.

"'Appropriate employment' under § 40-4-203(1)(b), MCA, 'must be determined with relation to the standard of living achieved by the parties during the marriage.'" Van Atta, 829 P.2d at 6 (citation omitted). We hold the District Court did not err in its finding that Marilyn could not properly support herself in relation

14

to the standard of living achieved during the marriage. The requirements of § 40-4-203(1), MCA, have been satisfied.

Finally, Raymond contends the District Court erred in awarding increased maintenance payments so that Marilyn could seek further education after the youngest child turns eighteen. The District Court found it would take Marilyn two years to acquire sufficient education and training in order that she might find appropriate employment. The District Court also found that Marilyn would not be able to maintain full-time employment while pursuing this education. Therefore, Raymond was ordered to pay increased maintenance in the amount of $500 per month beginning in August 1993. The increased payments were to continue for two years. Because we have held Marilyn did not have appropriate employment under § 40-4-203(1), MCA, we also hold the District Court did not err in awarding Marilyn increased maintenance.

V

Was the District Court's apportionment of the parties' assets equitable?

In his final assignment of error, Raymond claims that if the District Court erred in determining his obligation of child support, maintenance, medical insurance, and future medical expenses, those amounts should not be deducted from his share of the property settlement. As we have held the District Court did not err in its determination of the amount of these obligations, we do not address this issue in detail. In passing, we do note that

15

it was within the province of the District Court to deduct these amounts from Raymond's half of the marital estate after finding that this was the only means with which the obligations would be met. See e.g.: In re the Marriage of Crabtree (1982), 200 Mont. 178, 651 P.2d 29; In re the Marriage of Karr (1981), 192 Mont. 388, 628 P.2d 267.

The judgment of the District Court is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

Justice Karla M. Gray, specially concurring.

I concur in the opinion of the majority on issues 3, 4 and 5. I specially concur in that opinion on issues 1 and 2, notwithstanding my disagreement with the majority's approach and rationale.

As indicated by my joining of Justice Trieweiler's dissent in Mooney, it is my view that black and white rules of law with regarding to child support and maintenance owed by an incarcerated former spouse are neither necessary nor wise. Nor does the case before us fall within the facts of Mooney. Because respondent in this case has sufficient assets to meet appropriate child support and maintenance obligations, I would distinguish this case from Mooney and affirm the District Court on the basis that its findings are not clearly erroneous. On the record before us, I cannot say that the District Court erred in determining that respondent's unemployment due to incarceration did not constitute a change in circumstances so substantial and continuing as to make the terms of the temporary order unconscionable.

_____
Justice

17

March 5, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


PATRICK D. SHERLOCK
Sherlock & Nardi
30 Fifth Street East
Kalispell, MT 59901

Katherine R. Curtis
KAPLAN & CURTIS
P.O. Box 329
Columbia Falls, MT 59912

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
      Deputy