Michael E. BENDIXEN, Appellant,

v.

Bonita J. BENDIXEN, Appellee.

No. S–7737.

Supreme Court of Alaska.

Aug. 7, 1998.

Kenneth C. Kirk, Anchorage, for Appellant.

No appearance for Appellee.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

BRYNER, Justice.

After being jailed on criminal charges, Michael Bendixen moved to modify his child support payments, alleging a drop in income. The superior court held that Bendixen's incarceration was equivalent to voluntary unemployment. But serving jail time is seldom a goal of criminal misconduct, and so is not identical to purposeful unemployment; moreover, Alaska Civil Rule 90.3 imposes the same payment requirement on all parents who cannot afford support, even parents whose indigence stems from incarceration. We therefore reverse.

## I. FACTS AND PROCEEDINGS

Michael E. Bendixen and Bonita J. Bendixen (now Babcock) divorced in July 1990; the court awarded Bonita custody of the Bendixens' three children and ordered Michael to pay $1075.90 each month in child support.

In December 1995 Michael moved to modify his support payments, alleging that he was unemployed and could pay no more than the minimum level of child support because he had been in jail for the past nine months on felony charges. Michael hinted that a conviction was imminent: "It appears I may have to go back to prison in 1996, or [even] earlier."

In response to Michael's motion, Bonita informed the court that she could not afford a lawyer but would turn the matter over to the Child Support Enforcement Division; but CSED did not subsequently participate in the case.

Superior Court Judge John Reese, likening incarceration to voluntary unemployment, summarily denied Michael's motion: "Incarceration is not considered a substantial change of circumstances which would justify reduction in the obligation to support one's children, as crimes are willful conduct, just as voluntary unemployment is willful conduct."

Michael appeals this ruling.

## II. THE SUPERIOR COURT ERRED IN SUMMARILY DENYING MICHAEL'S MOTION ON THE GROUND THAT HIS INCARCERATION AMOUNTED TO VOLUNTARY UNEMPLOYMENT.

### A. Standard of Review

■ The conclusion that incarceration is equivalent to voluntary unemployment involves a legal issue that we review without deference to the superior court's decision, adopting the rule of law that is most persuasive in light of precedent, reason, and policy.[1]

### B. Historical Perspective

Fourteen years ago, in *Clemans v. Collins*,[2] we concluded that parents who are rendered indigent by incarceration generally should not be required to pay child support:

> Where a non-custodial parent is imprisoned for a crime other than nonsupport (or for civil contempt for failure to pay the same) we believe the better rule should be that the parent is not liable for such payments while incarcerated unless it is affirmatively shown that he or she has income or assets to make such payments.[3]

Three years after deciding *Clemans*, however, we adopted Rule 90.3, which sets out comprehensive guidelines for child support awards.[4] More recently, in *Douglas v. State, Department of Revenue*,[5] we held that Rule 90.3 supersedes *Clemans*.[6] We noted in *Douglas* that the explicit language of Rule 90.3(c)(1)[7] subjects every non-custodial parent to a minimum support obligation of $50 per month, and we concluded that even when an incarcerated parent is unable to afford any child support at all, the court must order the parent to make the minimum $50 monthly payment.[8]

Our cases interpreting Rule 90.3 have also recognized that, when courts calculate adjusted annual income for purposes of determining child support payments, they may impute earnings to non-custodial parents who are voluntarily unemployed or underemployed.[9] Although Rule 90.3 itself makes no mention of voluntary unemployment, the commentary to the rule discusses the problem and expressly endorses imputing income in certain situations involving voluntary unemployment:

> The court may calculate child support based on a determination of the potential income of a parent who voluntarily is unemployed or underemployed. A determination of potential income may not be made for a parent who is physically or mentally incapacitated, or who is caring for a child under two years of age to whom the parents owe a joint legal responsibility. Potential income will be based upon the parent's work history, qualifications and job opportunities. The court also may impute potential income for nonincome or low income producing assets.[10]

In view of *Douglas*'s holding that Rule 90.3 supersedes *Clemans*, and Rule 90.3's

---

1. *See Sauve v. Winfree*, 907 P.2d 7, 9 (Alaska 1995); *Karpuleon v. Karpuleon*, 881 P.2d 318, 320 n. 3 (Alaska 1994).

2. 679 P.2d 1041 (Alaska 1984).

3. *Id.* at 1041–42.

4. *See* Alaska Supreme Court Order 833 (effective August 1, 1987).

5. 880 P.2d 113 (Alaska 1994).

6. *See id.* at 116.

7. Alaska Civil Rule 90.3(c)(1) provides, in relevant part:

   (c) Exceptions.
   (1) The court may vary the child support award as calculated under the other provisions of this rule for good cause.... Good cause may include a finding:
   ....
   (B) ... that the parent with the child support obligation has a gross income which is below the poverty level as set forth in the Federal Register. However, a parent who would be required to pay child support pursuant to paragraph (a) or (b) must be ordered to pay a minimum child support amount of no less than $50.00 per month except as provided in paragraphs (a)(3) and (b).

8. *See Douglas*, 880 P.2d at 115–16.

9. *See, e.g., Nass v. Seaton*, 904 P.2d 412, 417 (Alaska 1995); *Kowalski v. Kowalski*, 806 P.2d 1368, 1371 (Alaska 1991); *Pugil v. Cogar*, 811 P.2d 1062, 1066 (Alaska 1991).

10. Alaska R. Civ. P. 90.3 cmt. III. C.

commentary encouraging courts to impute earnings in cases involving voluntarily unemployed parents, the permissibility of requiring incarcerated parents to pay child support is once more open to question.

### C. Reexamining the Status of Incarcerated Parents

■ The superior court reasoned that Michael's incarceration for a crime was tantamount to voluntary unemployment because "crimes are willful conduct, just as voluntary unemployment is willful conduct." But the court's reasoning overlooks significant differences between the willfulness involved in committing a crime and that required to support a finding of voluntary underemployment.

Not every voluntary act that has negative economic consequences amounts to voluntary unemployment. The commentary to Rule 90.3 strongly suggests that, to be considered voluntarily unemployed, a parent must engage in voluntary conduct for the purpose of becoming or remaining unemployed. Thus, the commentary advises that the imputed earnings of voluntarily unemployed parents should be based on their "potential income" and "job opportunities."[11] This wording obviously presupposes that some prospect of earning income or some opportunity to find employment actually exists.

Equating incarceration with voluntary unemployment thus seems inconsistent with Rule 90.3's commentary. It also seems to cut against the grain of our own case law. Although we have held that Rule 90.3 supersedes Clemans,[12] and so have acknowledged the need to enforce the rule's express requirement of minimal support payments when that requirement conflicts with that decision,[13] we have never specifically disavowed Clemans itself; nor have we questioned its underlying policies.[14]

To the contrary, just three years ago in A.H. v. W.P.,[15] we forbade imputing income to a parent who had no actual earning capacity.[16] Moreover, the previous year, when we decided in Douglas that Rule 90.3 required an incarcerated parent to pay $50 per month in child support regardless of her ability to afford the payment, we specifically rejected an argument urging us to treat incarcerated parents differently than other indigent parents:

> [T]he relevant question is not whether Douglas has prospective sources of income from which to pay support, but whether there is any basis in Rule 90.3 for treating indigent incarcerated parents differently from other indigent parents who are subject to the rule. We conclude that there is not.[17]

**11.** Alaska R. Civ. P. 90.3 cmt. III. C.

**12.** See Douglas, 880 P.2d at 116.

**13.** See id.

**14.** Clemans did not expressly discuss the rationale underlying its conclusion; instead it simply relied on Edmonds and Edmonds, 53 Or.App. 539, 633 P.2d 4 (1981), overruled by Willis v. Willis, 109 Or.App. 584, 820 P.2d 858 (1991), rev'd, 314 Or. 566, 840 P.2d 697 (1992). See Clemans, 679 P.2d at 1041. But one policy implicitly furthered by Clemans was that of avoiding the accumulation of unrealistic debt, thereby encouraging productive reintegration into society and resumption of parental duties upon release from prison. Cf. Leasure v. Leasure, 378 Pa.Super. 613, 549 A.2d 225, 227 (1988); Mooney v. Brennan, 257 Mont. 197, 848 P.2d 1020, 1024 (1993) (Trieweiler, J., dissenting). Other courts reaching the same conclusion as Clemans have advanced slightly different rationales. See, e.g., Pierce v. Pierce, 162 Mich.App. 367, 412 N.W.2d 291, 293 (1987) (reasoning that the continuation of child support obligation would be an additional penalty upon one who has already been penalized); Johnson v. O'Neill, 461 N.W.2d 507, 508 (Minn.App.1990) (same); Leasure, 549 A.2d at 227 (reasoning that a continued support obligation will not benefit children, since they will not get the support they need when they need it). For cases reaching contrary results, see, for example, Mooney, 848 P.2d at 1022; Willis, 820 P.2d at 860, rev'd, 314 Or. 566, 840 P.2d 697 (1992); Noddin v. Noddin, 123 N.H. 73, 455 A.2d 1051, 1053 (1983); Proctor v. Proctor, 773 P.2d 1389, 1391 (Utah App.1989) (all reasoning that incarceration is akin to voluntary underemployment because the non-custodial parents choose to engage in behavior that interferes with their ability to pay child support).

**15.** 896 P.2d 240 (Alaska 1995).

**16.** See id. at 245.

**17.** 880 P.2d at 116.

Interpreting voluntary unemployment to include joblessness stemming from incarceration would thus conflict not only with the spirit of *Clemans* but also with our more recent decisions in *A.H.* and *Douglas*.

These considerations lead us to conclude that the superior court erred in refusing to modify Michael's child support payments on the sole ground that his incarceration amounted to voluntary unemployment. Although incarceration is often a foreseeable consequence of criminal misconduct and all criminal acts are in some sense voluntary, non-custodial parents who engage in criminal misconduct seldom desire the enforced unemployment that accompanies incarceration; nor can they alter their situation; and, in stark contrast to parents who consciously choose to remain unemployed, jailed parents rarely have any actual job prospects or potential income. Equating incarceration to voluntary unemployment would require us to ignore these significant, real-life distinctions.

To be sure, before securing a reduction in child support payments, Michael will have to prove that he has suffered more than a temporary or insubstantial setback in earnings as a result of his incarceration.[18] And nothing precludes the superior court from considering the circumstances surrounding Michael's incarceration to the extent that they might contribute to a case-specific finding of exceptional circumstances warranting departure from Rule 90.3's child support guidelines.[19] But here, as in *Douglas,* Rule 90.3 provides no basis for automatically treating incarcerated parents differently from other categories of indigent parents who are subject to the same rule.

## III. *CONCLUSION*

We therefore REVERSE the superior court's order denying Michael's motion to modify his support obligation, and we RE-MAND this case to the superior court with instructions that Michael be given an opportunity for a hearing to substantiate his claim

of a reduced annual income resulting from his incarceration.

---

**18.** *See Patch v. Patch,* 760 P.2d 526, 530 (Alaska 1988).

**19.** *See* Alaska R. Civ. P. 90.3(c)(1).