In re: the Marriage of: Jeffrey LAMBERT, Appellant–Petitioner,

v.

Jill LAMBERT, Appellee–Respondent.

No. 32A01–0412–CV–535.

Court of Appeals of Indiana.

Dec. 15, 2005.

Mark Small, Indianapolis, for Appellant.

Richard A. Clem, Alden & Clem, Indianapolis, for Appellee.

## OPINION

ROBB, Judge.

The trial court dissolved the marriage of Jeffrey Lambert ("Father") and Jill Lambert ("Mother") on September 20, 2004. Father appeals the dissolution decree. We affirm.

### Issues

Father raises two issues for our review, which we restate as follows:

1. Whether the trial court properly imputed income to Father in calculating his child support obligation; and

2. Whether the trial court properly determined that the marital property should be evenly divided between the parties.

### Facts and Procedural History

The parties were married on October 6, 1995. At that time, Father owned and operated a property management business, Land Tech, consisting of several rental properties. Also, Father worked as a computer consultant for several businesses. Sometime in the first few years of the marriage, Father provided funds that enabled Mother to start a child-care business, Andersen Academy, Inc.

In June of 2002, two of Father's nieces alleged that he had molested them. The parties thereafter separated and Mother filed for divorce. Father was eventually convicted of two separate offenses in relation to the allegations and sentenced to a term in prison. After the parties separated but before Father was convicted, the parties entered into a provisional agreement whereby Father, based upon his computer consulting income of approximately $1,500 per week at the time, was to pay $277 per week in child support. By the time of the final hearing, Father was

incarcerated and no longer employed as a computer consultant. Father testified that as a result of his convictions, he would never again be able to work in that field.

In the dissolution decree, the trial court set Father's child support obligation at $277 per week, determining that Father's pre-incarceration income should be imputed to him for the purpose of calculating child support:

> [Father's] current incarceration is due entirely to his own voluntary actions, and therefore, the Court continues to impute income to [Father] consistent with the original child support calculation. This finding is supported by the decision in *Holsapple v. Herron*, 649 N.E.2d 140 ([Ind.Ct.App.1995]) and *Davis v. Vance*, 574 N.E.2d 330 ([Ind. Ct.App.1991]). In those cases the Appellate Court found that an obligor parent must take responsibility for crimes that he/she commits, and all of the consequences which flow from them. To relieve a person of their appropriate support obligation would ultimately relieve a person of some of those consequences.

Appellant's Appendix at 18. The court also determined that the marital property should be divided evenly between Father and Mother. Father now appeals.

## I. Child Support

Father contends that the trial court erred in imputing income to him for the purpose of calculating his child support obligation.

### A. Standard of Review

 Child support calculations are made utilizing the income shares model set forth in the Indiana Child Support Guidelines. *See McGill v. McGill*, 801 N.E.2d 1249, 1251 (Ind.Ct.App.2004). The Guidelines apportion the cost of supporting children between the parents according to their means, on the premise that children should receive the same portion of parental income after a dissolution that they would have received if the family had remained intact. *See id.* A calculation of child support under the Guidelines is presumed to be valid. *Id.* Where, as here, the trial court enters findings and conclusions, we apply a two-tiered standard of review: first, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *In re Marriage of Turner v. Turner*, 785 N.E.2d 259, 263 (Ind.Ct.App.2003). We will disturb the judgment only where there is no evidence supporting the findings, or the findings fail to support the judgment. *Id.* Father does not challenge the trial court's findings of fact herein; rather, he contends the child support determination is based upon erroneous legal determinations. We do not defer to a trial court's legal conclusions, and we will reverse a judgment that is clearly erroneous if it relies on an incorrect legal standard. *Id.*

### B. Imputation of Income

In imputing income to Father, the trial court specifically relied upon two Indiana cases: *Holsapple v. Herron* and *Davis v. Vance*. Mother contends these cases support the trial court's decision. Father points out that the facts of those cases differ in one significant respect from those in this case: the cited cases involved a modification of child support, whereas the instant case involves an initial determination of his child support obligation.

In *Davis*, the father was ordered in 1988 to pay $25.00 per week in child support. In 1990, the father was sentenced to a five-year prison term. Claiming his incarceration made it impossible to continue paying the support, the father petitioned the trial court to abate his child support obligation

until the end of his prison term so he would not accrue a large arrearage. The trial court denied the father's petition, and he appealed. We held that "a support obligation cannot be abated before it accrues due to the obligor's incarceration." 574 N.E.2d at 330. In *Holsapple,* the father was involved in a traffic accident ten years after his divorce decree set his child support obligation. He suffered personal injuries in the accident and was sentenced to an eight-year prison term for criminal acts related to the accident. The father requested an abatement of his support obligation claiming that the injuries he received in the accident, coupled with his pre-existing diabetes, rendered him disabled and unable to work. The trial court denied his request because his criminal acts contributed to his disability and were not appropriate grounds for abatement of his support obligation. We affirmed, holding that "when a criminal act or the resulting consequences therefrom is the primary cause of an obligor-parent's failure to pay child support, abatement of said obligation is not warranted." 649 N.E.2d at 142.

It seems clear, then, that in Indiana incarceration due to voluntary criminal conduct is not a valid rationale for abatement of an existing child support obligation. The question before us is, does the *Davis/Holsapple* rationale extend to cases in which a court is setting an initial child support obligation? [1]

As this is a case of first impression in Indiana, we look to other states that have considered this question. There are states that fall on both sides of the line concerning whether a support obligation should be imposed when a parent is incarcerated at the time the initial support determination is made. For instance, in Nebraska, it has been held that where a parent is incarcerated at the time initial child support is determined, that parent's pre-incarceration earnings should not be considered in the computation because the computation would be based upon an earning capacity impossible for the parent to realize. *State v. Porter,* 259 Neb. 366, 610 N.W.2d 23, 29 (2000). On the other hand, in Montana, it has been held that incarceration should have no effect upon an original child support order and imputing income to the incarcerated parent based upon his pre-incarceration income is not an abuse of discretion. *In re Marriage of Olsen,* 257 Mont. 208, 848 P.2d 1026, 1030–31 (1993). *See also* Frank J. Wozniak, Annotation, *Loss of Income Due to Incarceration as Affecting Child Support Obligation,* 27 A.L.R.5th 540, § 13, 1995 WL 900183 (1995) (summarizing cases considering the

---

1. *Davis* relied upon two out-of-jurisdiction cases to support its decision. In *Parker v. Parker,* 152 Wis.2d 1, 447 N.W.2d 64, 66 (Ct.App.1989), *review denied,* the Wisconsin Court of Appeals determined that "child support need not terminate during incarceration," and in *Koch v. Williams,* 456 N.W.2d 299, 300 (N.D.1990), the North Dakota Supreme Court determined that "a child support obligor's incarceration ... does not constitute a material change of circumstances justifying a modification of child support payments." Since *Davis* was decided, North Dakota has enacted legislation that effectively rendered *Koch* moot, and the rule in that state is now that a trial court may impute income when an obligor has reduced his income but is not obligated to do so. *See Logan v. Bush,* 621 N.W.2d 314 (N.D.2000). Following *Parker,* the Wisconsin Supreme Court held that "incarceration is an appropriate factor for courts to consider in reviewing a petition for modification, but the fact of incarceration alone is insufficient for a court to modify, or refuse to modify, a child support order." *Marriage of Rottscheit,* 262 Wis.2d 292, 664 N.W.2d 525, 535 (2003). We recognize, as the dissent points out, that the cases relied upon by *Davis* are no longer good law in their respective states. Nonetheless, we do not believe that the subsequent changes to the law in Wisconsin and North Dakota change what public policy in Indiana suggests is the appropriate result here.

issue of whether a child support obligation should be imposed when a parent is incarcerated at the time of the initial determination).

■ In a typical case, the Child Support Guidelines provide that if a parent is voluntarily underemployed, the trial court must calculate child support by determining the parent's potential income. Ind. Child Support Guideline 3(A)(3). Potential income is to be determined upon the basis of "employment potential and probable earnings level based on the obligor's work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community." *Id.* The purposes for including potential income are to "discourage a parent from taking a lower paying job to avoid the payment of significant support" and to "fairly allocate the support obligation when one parent remarries and, because of the income of the new spouse, chooses not to be employed." Child Supp. G. 3, cmt. 2c. The trial court enjoys broad discretion to impute income to a parent so that the parent cannot evade a support obligation. *Glover v. Torrence*, 723 N.E.2d 924, 936 (Ind.Ct.App.2000). However, we also recognize that there are circumstances in which a parent is unemployed or underemployed for a legitimate purpose other than avoiding child support and in those circumstances, there are no grounds for imputing income. *See Abouhalkah v. Sharps*, 795 N.E.2d 488, 491 (Ind.Ct.App. 2003) (holding that trial court erred in imputing income to a father who had left his job and was now earning less because "[a] parent who chooses to leave his employment rather than move hundreds of miles away from his children is not voluntarily unemployed or underemployed. Instead, he is a loving parent attempting to do the right thing for his children.").

■■ Clearly, criminal activity is a voluntary act with unemployment as a conse-

quence, but rarely, if ever, would it be undertaken with the sole purpose of avoiding child support. Unemployment by incarceration does not fall squarely into our standard child support rubric. Although it is not an act undertaken for the purpose of avoiding child support, it is clearly not an act undertaken for a legitimate purpose. We are guided, as in all child custody, support, and visitation matters, by the best interests of the child. *See Naggatz v. Beckwith*, 809 N.E.2d 899, 902 (Ind.Ct. App.2004), *trans. denied*. When a parent has voluntarily taken a reduction in income for a legitimate purpose, such as being closer to his or her children or caring for his or her aging and ill parents, we are weighing one positive public policy—adequate support for children—against another positive public policy—quality of life for all family members. When a parent has no such legitimate reason for the reduction in income, we are weighing the positive public policy of support for children against the negative public policy of "rewarding" bad behavior. We find no reason to treat an incarcerated parent any differently than a non-custodial parent who has a higher income imputed because of a voluntary decision causing an unnecessary decline in income. Not only is incarceration a foreseeable result of voluntary criminal conduct, but conviction of a crime necessarily imputes some fault to the perpetrator, fault for which he should not be rewarded with a lower child support obligation than he would have otherwise.

The obligation to support a child belongs equally to both parents. That Father engaged in criminal conduct—for whatever purpose—should not alleviate his responsibility to support his children in the same manner as if he had not committed the crime. We recognize the practical difficulties Father will face in meeting the child support obligation imposed by the trial

court while incarcerated, and we note that a contempt finding would likely be inappropriate for any arrearage that Father accrues while incarcerated. We also note that earned income is not the only relevant source of income. Indiana Child Support Guideline 3(A)(1) identifies other sources of income: "pensions, interest, trust income, annuities, capital gains, social security benefits, workmen's compensation benefits, unemployment insurance benefits, disability insurance benefits, gifts, inheritance, [and] prizes . . . ." In the event Father is able to participate in income-earning activities during his incarceration, receives an inheritance, or otherwise obtains any assets while incarcerated, these resources should be available for the children's support.[2]

To do as Father asks and find that he has no income and is only obligated to provide the minimum child support allowed by the Guidelines would be to overlook the fact that Father's situation is one of his own making, and would put the onus on Mother to both raise the children and seek court intervention if and when Father's situation improves. Accordingly, we hold that the trial court properly imputed income to Father when determining the initial child support order.

## II. Division of Marital Property

Father also contends that the trial court erred in determining the marital property should divided equally between the parties. Father contends the trial court's order was erroneous for three reasons: (1) Father brought far greater assets into the marriage than did Mother; (2) Father's income during the marriage was far in ex-

cess of Mother's; and (3) Father's future earning potential is much lower than Mother's.

### A. Standard of Review

 In a marital dissolution action, the trial court must divide the marital property in a "just and reasonable manner." Ind.Code § 31–15–7–4(b). We are guided by a statutory presumption that an equal division of the marital estate is just and reasonable. Ind.Code § 31–15–7–5. A party seeking to rebut the presumption of equal division of marital property bears the burden of proof in doing so. *Id.* "Property," in this context, includes property owned by either spouse prior to the marriage, acquired by either spouse in his or her own right, or acquired by the joint efforts of the spouses. *Id.* "The 'one-pot' theory . . . specifically prohibits the exclusion of any asset from the scope of the trial court's power to divide and award." *Thompson v. Thompson,* 811 N.E.2d 888, 914 (Ind.Ct.App.2004), *trans. denied.* Even though the trial court may ultimately decide to award an asset solely to one spouse, it must first include the asset in its consideration of the marital estate to be divided. *Id.*

 The division of marital assets is committed to the trial court's sound discretion, whose determinations in that regard will be reversed only for an abuse of discretion. *DeSalle v. Gentry,* 818 N.E.2d 40, 44 (Ind.Ct.App.2004). A party challenging the division of marital property "must overcome a strong presumption that the court considered and complied with the applicable statute, and that presumption is one of the strongest presump-

---

2. The dissent also notes these sources of earned income and posits that if Father's child support obligation is reduced now and then Father for example, inherits property in the future, Mother could petition at that time for a modification of support to reflect that

asset. However, this only works prospectively and requires Mother to be abreast of Father's financial circumstances and puts the burden on her to seek court intervention. Under our result, if Father comes into money, it will be available to pay any arrearage.

tions applicable to our consideration on appeal." *Id.* Upon review, we will not reweigh the evidence or assess witness credibility. *Id.* Also, we will consider only the evidence most favorable to the trial court's distribution of marital property. *Id.*

### B. Equal Division

■■■ Father contends the trial court erred in determining an equal division of assets was just and reasonable because he brought far greater assets into the marriage than did Mother. The trial court may, in certain circumstances, set aside to one party the value of a marital asset where the other party did not contribute to its acquisition, but the court is not required to do so. *In re Marriage of Pulley,* 652 N.E.2d 528, 530 (Ind.Ct.App.1995), *trans. denied.* Specifically,

> [a]n unequal division of marital property is justified where a party can demonstrate that certain marital property was acquired by one spouse prior to the marriage, that the other spouse made no contribution toward the acquisition of the property or the accumulation of the property, and the funds were never commingled with joint marital assets.

*Doyle v. Doyle,* 756 N.E.2d 576, 579 (Ind. Ct.App.2001).

■■ Mother and Father were married in 1995. Between 1987 and 1993, Father purchased ten rental properties. He sold two of those before he and Mother were married, and sold seven of the remaining eight by the fall of 1996. The only one he still owned after 1996 was the property located at 4707 North Park Avenue. The couple purchased ten rental properties during the marriage, but had sold all except one of those by summer 2000, nearly two years before the parties separated. They still owned the property located at 3702 North Illinois Street at the time of the final hearing. During the nearly seven years the parties were married, they had two children and both parties worked full-time. It appears their finances were commingled during the marriage. Moreover, there is no irrefutable evidence that the proceeds from any of the properties sold during the marriage were segregated from the couple's regular finances or could be discretely "tracked" as such beyond the sale of the property and the receipt of the proceeds. Finally, Mother testified that she occasionally helped Father maintain the rental properties, and performed administrative tasks relative to that business. On these facts, we cannot say the trial court abused its discretion in determining that Father's individual interest in the rental properties did not warrant an unequal distribution of the marital property.

Father next contends that he was entitled to a greater-than-equal share of the marital property because his income during the marriage was well in excess of Mother's. Indiana Code section 31–15–7–5(1) specifically provides that, in determining whether the marital property should be distributed unequally, the court should consider "[t]he contribution of each spouse to the acquisition of the property, *regardless of whether the contribution was income producing.*" (Emphasis added.) Thus, courts are not limited to assessing the financial contributions made by each spouse during the course of the marriage. Courts can, and should, consider non-income producing contributions as well.

■■ Mother not only ran her own daycare business, but also helped Father clean and manage his rental properties, working in an unpaid capacity. As indicated above, two children were born to the marriage. Mother testified she was responsible for supervising the children during the day, which she did by caring for them at her daycare. In light of Mother's contribu-

tions during the marriage, both income-producing and non-income-producing, the disparity between Mother and Father's incomes does not compel the conclusion that Father is entitled to more than fifty percent of the marital property.

▇▇▇ Finally, Father contends he is entitled to more than half the marital estate because his future earning potential is significantly lower than Mother's. Although child support and property division both concern divorcing parties' finances, the factors relevant to one are not necessarily relevant to the other. More specifically, the former is a function of the parties' current and anticipated future income, whereas the later is an allocation of existing assets. Although fault is generally irrelevant in a dissolution proceeding, it is a proper consideration in determining how marital property should be divided between the parties, especially with respect to dissipation of assets. *In re Marriage of Coyle*, 671 N.E.2d 938, 942 (Ind.Ct.App. 1996). *See also* Ind.Code § 31–15–7–5 (a court may consider "[t]he conduct of the parties during the marriage as related to the disposition or dissipation of their property."). A finding of dissipation is based upon the conclusion that the marital asset or assets in question were destroyed, wasted, or spent foolishly. In fact, "[w]aste and misuse are the hallmarks of dissipation." *Coyle*, 671 N.E.2d at 943. The import of a finding of dissipation is that the dissolution court is, in effect, free to charge the entirety of the wasted asset against the offending spouse's presumed one-half share of the marital property or otherwise deviate from the presumptive fifty-fifty split on that basis. *See id.*

▇▇▇ Although not directly relevant, we discuss dissipation here because it illustrates the principle underlying our rejection of Father's argument. Namely that while it is true that Father's prospects for earning income in the future are not promising and are certainly more restricted than Mother's prospects, we cannot ignore the reason for Father's relatively grim prospects for future employment—Father's own criminal conduct. Before committing the offenses of which he was convicted, Father enjoyed successful ventures in both real estate and computer consulting. Those two means of income are no longer available to Father because of his convictions for child molesting. We cannot impose a financial penalty upon Mother for Father's criminal conduct by awarding to him a greater percentage of the marital estate than he would otherwise be entitled. The trial court did not err in ordering an equal division of the marital assets.

*Conclusion*

The trial court did not err in imputing income to Father for the purpose of calculating child support. Moreover, the trial court properly divided the marital estate equally between the parties. The judgment of the trial court is therefore affirmed.

Affirmed.

BAILEY, J., concurs.

FRIEDLANDER, J., dissents with opinion.

FRIEDLANDER, Judge, dissenting.

I agree with the majority's determination that the trial court did not err in dividing the marital properly evenly between the parties. I respectfully disagree, however, with the majority's determination that the trial court properly imputed Father's pre-incarceration income in calculating his initial support obligation.

We are writing on a more or less blank slate on this issue. The cases relied upon by the trial court, *Holsapple v. Herron*,

649 N.E.2d 140 and *Davis v. Vance*, 574 N.E.2d 330, are not on point because they involved a modification of child support, not the initial determination of the obligation. Thus, as the majority notes, this is a question of first impression in Indiana. *Davis* and *Holsapple* involved situations in which a parent had already been ordered to pay support, and thereafter sought an order abating support while the obligor was incarcerated. The question in this case is, does the *Davis/Holsapple* rationale extend to cases in which the court is setting the initial support amount? That is, should a trial court ignore the financial consequences on a noncustodial parent of pre-divorce conviction and/or incarceration when calculating the initial child support obligation? I believe it should not.

I believe it is useful to examine the decisions that the majority decides today should be extended. *Holsapple* was decided after *Davis*, and in fact, depended exclusively upon *Davis* as support for its decision. The *Davis* panel cited two decisions in appellate courts of our sister states in support of its decision. It noted that in *Parker v. Parker* 152 Wis.2d 1, 447 N.W.2d 64, 66 (Ct.App.1989), *review denied*, the court determined "child support need not terminate during incarceration." It also noted the North Dakota Supreme Court's determination that "a child support obligor's incarceration . . . does not constitute a material change of circumstances justifying a modification of child support payments." *Koch v. Williams*, 456 N.W.2d 299, 300 (N.D.1990). The *Davis* panel found those two cases persuasive, and in fact indicated those decisions played a significant role in its holding, stating, "We agree with and adopt the Wisconsin and North Dakota approaches." *Davis v. Vance*, 574 N.E.2d at 331. I note, however, that both cases have since been overturned and are no longer good law in Wisconsin and North Dakota, respectively.

In North Dakota, following legislative provisions that effectively rendered *Koch* moot, that state's supreme court determined that a trial court now *may* impute income when a child support obligor has reduced his or her income, but it is *not obligated* to do so. *See Logan v. Bush*, 621 N.W.2d 314 (N.D.2000). In *Marriage of Rottscheit*, 262 Wis.2d 292, 664 N.W.2d 525, 535 (2003), the Wisconsin Supreme Court abandoned the *Parker* ruling and held instead, "[I]ncarceration is an appropriate factor for courts to consider in reviewing a petition for modification, but the fact of incarceration alone is insufficient for a court to modify, or refuse to modify, a child support order." Thus, the two states cited as authority in *Davis* no longer adhere to the rule Mother herein advocates. Moreover, other states have weighed in on the side of permitting a reduction of support due to incarceration.

*Bendixen v. Bendixen*, 962 P.2d 170 (Alaska 1998), *In re Marriage of Walters*, 575 N.W.2d 739 (Iowa 1998), *Wills v. Jones*, 340 Md. 480, 667 A.2d 331 (1995), and *Leasure v. Leasure*, 378 Pa.Super. 613, 549 A.2d 225 (1988) all address the question of whether a noncustodial parent's incarceration may be considered in setting the child support amount. Those cases squarely addressed the central argument made by Mother—and the primary rationale for the holdings in both *Holsapple* and *Davis*, i.e., that a child support obligor should not be permitted to reduce his or her obligation based upon the consequences of voluntary conduct. Descriptively dubbed "voluntarily impoverished," *see Wills v. Jones*, 340 Md. 480, 667 A.2d 331, or a "self-inflicted" decrease in earning capacity, *see Marriage of Walters*, 575 N.W.2d 739, the courts in *Bendixen, Walters, Wills*, and *Leasure* all agreed that incarceration is indeed a result of voluntary conduct, but disagreed that such fore-

closed the possibility of reducing child support therefore as a result of the con-comitant reduction in income.

In making that determination, the courts all placed great significance on what one court termed the parent's "motivations and intentions", *Wills v. Jones*, 667 A.2d at 335, in committing the offense resulting in incarceration, which then results in "voluntary impoverishment". *Id.* I, too, believe the obligor's motivation for committing the crimes is *the* paramount inquiry in deciding whether the child support obligation should be reduced because of incarceration. *See Bendixen v. Bendixen*, 962 P.2d at 172 ("[n]ot every voluntary act that has negative economic consequences amounts to voluntary unemployment.... [T]o be considered voluntarily unemployed, a parent must engage in voluntary conduct for the purpose of becoming or remaining unemployed"); *In re the Marriage of Walters*, 575 N.W.2d at 743 (ordering a reduction in child support upon its conclusion that the obligor's "reduction in income and earning capacity [was] the result of his criminal activity which, although voluntary, was not done with an improper intent to deprive his children of support"); *Wills v. Jones*, 667 A.2d at 339 ("we hold that a prisoner is only 'voluntarily impoverished' as a result of incarceration if the crime leading to incarceration was committed with the intention of becoming incarcerated or otherwise impoverished"); and *Leasure v. Leasure*, 549 A.2d at 227 ("[i]ncarceration is usually an involuntary situation. While it may be possible to envision a parent avoiding child support by going to prison, we find it highly unlikely in the instant case").

I believe the principle that applied in the foregoing jurisdictions with respect to the modification of an existing child support obligation applies as well in Indiana when the child support obligation is initially set.

In reaching this conclusion, I note the Guidelines do not envision the assignment of blame when setting the support amount. Rather, it is generally a straightforward mathematical calculation utilizing a prescribed formula and plugging in the parents' respective incomes. Thus, with the limited exception of voluntary underemployment or unemployment motivated by an intention to escape paying support, the child support obligation is based upon the parents' income, and not fault. No one has suggested here that Father's crimes were committed in order to become incarcerated so that Father's child support obligation would be lessened. If such were the case, I would agree that income should be imputed. Absent that, imputing pre-incarceration income to Father is nothing more than an extra punishment. Punishment is not the point of a child support order.

I reject out of hand Mother's contention, and the majority's conclusion, that were my view to carry the day, it would represent a "reward" to Father for his criminal conviction. To put it plainly, using an incarcerated parent's actual income in calculating child support incentives nothing, at least with respect to the decisions then available to that parent. Indeed, leaving aside the loss of liberty and other significant negative aspects of incarceration, a prisoner's child support obligation will be reduced only in proportion to the prisoner's reduced ability to pay. "The prisoner's loss of income and subsequent reduced child support obligation cannot make the prisoner richer than before the commission of the crime." *Wills v. Jones*, 667 A.2d at 339. Neither can I agree with the majority's assertion that taking into account Father's current financial circumstances "overlook[s] the fact that the situation is one of his own making." Op. at 715. I do not propose to overlook anything, including Father's present circumstances and

the reason he finds himself in this predicament. To the contrary, I believe that in reviewing this support order, we *should* be mindful of where he is and how he got there.

In the final analysis, the majority's holding today purposefully and completely ignores the reality of the situation in which Father and others similarly situated find themselves. As a result of incarceration, their income level has been drastically reduced, and a child support obligation based upon pre-incarceration income becomes impossible to pay. Thus, they remain incarcerated and unable to work, and the arrearage grows, while the present and future ability to pay the arrearage is significantly impaired. This reality was aptly described by Chief Justice Krivosha of the Supreme Court of Nebraska as follows:

> We obviously recognize that the child support judgment will not be paid during the time that the parent is incarcerated, and therefore the judgment will simply accrue with interest. Such a situation provides little or no benefit to anyone. The children do not receive the benefit of the proceeds during the time they require the funds, and the parent is simply confronted with a large, nondischargeable judgment upon release from prison, at a time when the prospect of paying a large judgment with interest is extremely unlikely.

*Ohler v. Ohler*, 220 Neb. 272, 369 N.W.2d 615, 618–19 (1985) (Krivosha, J., dissenting).

Applying the foregoing principles to the instant case, Father owned a computer-consulting firm before he was convicted and incarcerated for molesting his nieces. He testified that his felony convictions will render it impossible for him to ever again work in that capacity, an assertion that Mother did not and does not now dispute. Father's only other source of income was from the proceeds of rental properties he owned at the time. Several of those properties were sold during the marriage, and in the dissolution decree the court ordered him to sell all of the remaining rental properties and split the proceeds with Mother. As a result, Father is no longer able to earn a living in his fields of expertise. There can be little doubt that the prospects for earning an income in the future that even approaches his pre-incarceration income are bleak. The law should not pretend it is otherwise because, among other things, that pretense will be of no benefit to his children.

In fact, this brings me back to the beginning point for reviewing support issues: the best interests of the child or children involved. As the majority notes, that is our guiding light in these cases. When we decide to impute income, we do so to remove an incentive for a parental decision that redounds to the child's detriment, i.e., to become underemployed in order to pay less support. Surely imbedded in our decision-making process is an awareness that the decision (to become underemployed) is reversible. Thus, depending on when the decision to impute is rendered, it serves either as a disincentive for the parent to seek to underemploy himself or herself, or as an incentive to "undo" that decision and become fully employed. It cannot possibly have either effect in this case.

Finally, it is significant to me that the determination of income for purposes of calculating child support is not a one-time-only exercise. If Father's economic prospects brighten at any time in the future while he is obligated to pay child support, Mother is free to seek modification at that time. I note also that earned income is not the only relevant source of income and assets courts consider in determining the amount of the child support obligation, regardless of when the calculation is made

(i.e., whether at the time of the initial calculation or at subsequent modifications). Guideline 3(A)(1) of the Indiana Child Support Guidelines identifies other source of income: "pensions, interest, trust income, annuities, capital gains, social security benefits, workmen's compensation benefits, unemployment insurance benefits, disability insurance benefits, gifts, inheritance, [and] prizes". Thus, for instance, if Father were to inherit property in the future while he is still required to pay child support, Mother could petition the court at that time to modify support to reflect that asset. I would reverse the decision to impute to Father his pre-incarceration income for purposes of calculating his child support obligation, and remand with instruction to recalculate Father's support obligation consistent with the principles set out in my dissent.