Shawn C. MILLER, Appellant–
Respondent,

v.

Caryn A. (Miller) SUGDEN,
Appellee–Petitioner.

No. 29A02–0511–CV–1093.

Court of Appeals of Indiana.

June 26, 2006.

Rehearing Denied Aug. 11, 2006.

Michael F. Vertesch, Indianapolis, IN, Attorney for Appellant.

Katherine A. Harmon, Cohen & Malad, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Shawn C. Miller ("Father") appeals from a modification of his child support obligation in Hamilton Superior Court. He raises the following restated issue: whether the trial court erred when it determined that Father was voluntarily underemployed and imputed previous income to him for purposes of modifying his child support obligation. Concluding that the trial court properly found Father voluntarily underemployed, but erred in its determination of imputed income, we reverse and remand for proceedings consistent with this opinion.

### Facts and Procedural History

On September 2, 2003, Father and Caryn A. (Miller) Sugden's ("Mother") marriage was dissolved. Under the terms of the parties' settlement agreement, Father was required to pay Mother child support for their two minor children in the amount of $349 per week. The Child Support Worksheet attached to the settlement agreement indicated that Father had a gross weekly income of $1174.

At the time of the dissolution, Father was employed as a chemist at Eli Lilly. He holds both a bachelors degree in chemistry and a masters degree in synthetic organic chemistry. Appellant's App. p. 15. While employed by Lilly, Father was responsible for certain D.E.A. watchlist chemicals, which he described as chemicals "used for the manufacture or precursor to a street drug." Tr. p. 27. Lilly concluded that Father "was involved in the unauthorized removal of Lilly chemistry material" from his lab. Ex. Vol., Petitioner's Ex. 1. As a result, Father was fired from Lilly on April 5, 2004, for what was noted in his personnel file as "serious misconduct." *Id.*

Since his termination from Lilly, Father has held three jobs. He worked for Plants Galore for approximately one month before quitting. Tr. p. 36. Father then secured a position with a water company as a chemist earning $900 per week. His employment was terminated after a month because the water company did not believe that Father's performance was adequate. Tr. p. 25. A year after losing his job with Lilly, Father began working roughly fifteen hours per week for FedEx, earning $10.77 per hour. Appellant's App. p. 9.

On April 27, 2004, Father filed a verified petition for retroactive modification of child support, alleging a substantial and continuing change in circumstances so as to make the terms of the child support order unreasonable. Mother filed a motion for rule to show cause on July 13, 2004. The trial court conducted a combined hearing on April 15, 2005. At that time, Father had been working at FedEx for two weeks.

On June 7, 2005, the trial court issued its findings and conclusions. Based upon an increase in Mother's income and anticipated reductions in child care expenses, the court ordered Father's child support obligation reduced to $315 from April 15 through May 31, 2005, $231 from June 3 though July 29, 2005, and $298 thereafter. Appellant's App. p. 10. In doing so, the trial court imputed to Father the gross weekly income he had earned while at Lilly. Father now appeals.

### Standard of Review

Our supreme court recently addressed appellate court deference to trial court findings in family law matters, including findings of "changed circumstances" within the meaning of Indiana Code section 31–16–8–1:

"Whether the standard of review is phrased as 'abuse of discretion' or 'clear error,' this deference is a reflection, first and foremost, that the trial judge is in

the best position to judge the facts, to get a feel for the family dynamics, to get a sense of the parents and their relationship to their children-the kind of qualities that appellate courts would be in a difficult position to assess. Secondly, appeals that change the results below are especially disruptive in the family law setting. And third, the particularly high degree of discretion afforded trial courts in the family law setting is likely also attributable in part to the "fluid" standards for deciding issues in family law cases that prevailed for many years.

The third of these reasons has largely fallen by the wayside as the Legislature and [the Supreme] Court have promulgated a series of statutes, rules, and guidelines—standards that bring consistency and predictability to the many family law decisions. But, the importance of first-person observation and avoiding disruption remain compelling reasons for deference.

We recognize of course that trial courts must exercise judgment, particularly as to credibility of witness, and we defer to that judgment because the trial court views the evidence firsthand and we review a cold documentary record. Thus, to the extent credibility or inferences are to be drawn, we give the trial court's conclusions substantial weight. But to the extent a ruling is based on an error of law or is not supported by the evidence, it is reversible, and the trial court has no discretion to reach the wrong result."

*MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940–41 (Ind.2005) (internal citations and footnote omitted).

The trial court entered findings of fact and conclusions of law. Thus, we apply a two-tiered standard of review: first, we determine whether the evidence supports the findings and second, whether the findings support the judgment. *Freese v. Burns*, 771 N.E.2d 697, 700 (Ind.Ct.App. 2002). We do not weigh the evidence or judge the credibility of the witnesses but, rather, consider only that evidence most favorable to the judgment, together with the reasonable inferences that can be drawn therefrom. *Scoleri v. Scoleri*, 766 N.E.2d 1211, 1215 (Ind.Ct.App.2002). Challengers must establish that the trial court's findings are clearly erroneous. *Freese*, 771 N.E.2d at 701. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. *Id.* However, we do not defer to conclusions of law, and a judgment is clearly erroneous if it relies on an incorrect legal standard. *Id.*

### Discussion and Decision

■ Indiana Code § 31–16–8–1 provides in relevant part:

Provisions of an order with respect to child support ... may be modified or revoked.... [M]odification may be made only:

(1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

(2) upon a showing that:

(A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

(B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was set.

Ind.Code § 31–16–8–1 (1998).

■ The determination of whether or not the change in circumstances asserted is "so substantial and continuing" as to render the prior child support order's terms "unreasonable" is a mixed question

of "law and fact." *MacLafferty,* 829 N.E.2d at 941. To the extent it is a question of law, "it is the duty of the appellate court to give it de novo review—and doing so promotes the values of consistency, predictability, and enunciation of standards that curb arbitrariness." *Id.* (citation omitted).

■ Father argues that the trial court erred when it determined that he was voluntarily underemployed and imputed income to him based on his earnings while employed by Lilly. The Indiana Child Support Guidelines provide that if a parent is voluntarily unemployed or underemployed, child support shall be determined based on potential income. Ind. Child Support Guideline 3(A)(3). "A determination of potential income shall be made by determining employment potential and probable earnings level based on the obligor's work history, occupational qualifications, prevailing job opportunities, and earning levels in the community." *Id.* The purposes behind determining potential income are to "discourage a parent from taking a lower paying job to avoid the payment of significant support" and to "fairly allocate the support obligation when one parent remarries and, because of the income of the new spouse, chooses not to be employed." Child Supp. G. 3 cmt. 2(c). *See also In re Paternity of Buehler,* 576 N.E.2d 1354, 1356 (Ind.Ct.App.1991).

■ A trial court has wide discretion with regard to imputing income to ensure the child support obligor does not evade his or her support obligation. *Apter v. Ross,* 781 N.E.2d 744, 761 (Ind.Ct.App. 2003), *trans. denied.* However, child support orders cannot be used to "force parents to work to their full economic potential or make their career decisions based strictly upon the size of potential paychecks." *In re E.M.P.,* 722 N.E.2d 349, 351–52 (Ind.Ct.App.2000).

In *Carmichael v. Siegel,* 754 N.E.2d 619, 633 (Ind.Ct.App.2001), this court held:

if a parent's intentional misconduct directly results in a reduction of his or her income, no corresponding decrease in his or her child support obligation should follow, because such misconduct results in 'voluntary underemployment' according to the Child Support Guideline 3(A)(3), and the income the parent was earning before that misconduct should be imputed to that parent.

*Carmichael* involved a parent who petitioned for a modification of child support after his license to practice law was suspended because he intentionally deceived a bankruptcy court. Father argues that the circumstances leading to his termination from Lilly "did not rise to the level of intentional misconduct that would otherwise justify a court in finding voluntary underemployment[.]" Br. of Appellant at 10. He asserts that at most, the evidence establishes "simply that Father was negligent in performing his job[.]" Br. of Appellant at 15.

We note that there is no indication that criminal charges were ever filed against Father with regard to the disappearance of chemicals from his lab. Father testified that he "[a]bsolutely [did] not" remove the chemicals from the lab, but admitted that their disappearance was ultimately his responsibility and that Lilly characterized the incident as "serious misconduct." Tr. pp. 28–29. While the evidence here supports the trial court's finding that Father's termination from Lilly was the result of his own misconduct, we cannot conclude that Father's conduct rises to the level of intentional deceit present in *Carmichael.* Therefore, we find *Carmichael* to be distinguishable.

In determining that Father was voluntarily underemployed, the trial court specifically found as follows:

"5. Father has a Master's degree in Synthetic Organic Chemistry and Bachelor's degree in Chemistry. From 1994 to 2004, Father worked for Eli Lilly as an organic chemist. He was promoted to associate senior organic chemist in the year 2000. Father was terminated from Eli Lilly for serious misconduct after he was found to be missing assigned chemicals used for the development of street drugs.

6. Since the termination of his employment at Eli Lilly more than one year ago, Father has been employed only two months and two weeks at three different jobs. He also started further schooling and quit. Father acknowledges that he has an alcohol problem but states that it has nothing to do with his inability to find a job. He also states that he does not believe his termination from Eli Lilly prevented him from obtaining employment....

7. The Court finds that the children should not suffer a reduction in support when Father's termination was due to his own misconduct. Based upon Father's historical earnings, Father has a potential of earning the same gross weekly income that he earned while employed at Eli Lilly and Company...."

Appellant's App. p. 9.

Father also argues that, given the lack of positive response to his job applications and the job opportunities existing in his field, his previous income level is simply not available to him. He further argues that he should not be "penalized indefinitely for the exercise of poor judgment" which resulted in his termination from Lilly. Br. of Appellant at 17 (quoting *Homsher v. Homsher*, 678 N.E.2d 1159, 1164 (Ind.Ct.App.1997)).

However,

[w]hen a parent has some history of working and is capable of entering the work force, but voluntarily fails or refuses or to be employed *in a capacity in keeping with his or her capabilities*, such a parent's potential income should be determined to be a part of the gross income of that parent. The amount to be attributed as potential income in such a case would be the amount that the evidence demonstrates he or she was capable of earning in the past.

Child Supp. G. 3, cmt. 2(c)(2) (emphasis added).

Our review of the record indicates that, after his termination from Lilly, Father was able to secure employment as a chemist with a water company, a position that paid at a rate of $900 a week. Tr. p. 24. This evidence clearly demonstrates that Father was capable of earning $900 per week. Under these particular facts and circumstances, we conclude that the trial court erred when it imputed income to Father in the amount of $1174. Therefore, we reverse and remand to the trial court for a determination of Father's child support obligation pursuant to the Indiana Child Support Guidelines based upon an imputed income of $900 per week.

Reversed and remanded.

VAIDIK, J., concurs.

ROBB, J., concurs in part and dissents in part with opinion.

ROBB, Judge, concurring in part, dissenting in part with opinion.

I concur in part with the majority. I agree with the majority (1) that Father's termination from Eli Lilly was not due to intentional misconduct; (2) that Father is voluntarily underemployed; (3) that it is proper for the trial court to impute income to Father; and (4) that the trial court erred "when it imputed income to Father in the full amount of his Lilly salary at the

rate of $1174 per week." Slip op. at 8. However, I disagree with the majority's conclusion that on remand the trial court should impute an income of $900 per week to Father.

The Child Support Guidelines provide that if a parent is voluntarily underemployed, the trial court must calculate child support by determining the parent's potential income. Ind. Child Support Guideline 3(A)(3). Potential income should be determined upon the basis of "employment potential and probable earnings level based on the obligor's work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community." *Id.* One of the purposes for including potential income is to "discourage a parent from taking a lower paying job to avoid the payment of significant support...." Child Supp. G. 3, cmt. 2c. "The trial court enjoys broad discretion to impute income to a parent so that the parent cannot evade a support obligation." *In re Marriage of Lambert,* 839 N.E.2d 708, 714 (Ind.Ct.App.2005). We have also stated that "child support orders cannot be used to force parents to work to their full economic potential or make their career decisions based strictly upon the size of potential paychecks." *Scoleri v. Scoleri,* 766 N.E.2d 1211, 1219 (Ind.Ct.App.2002).

The majority concludes that the trial court should impute an income of $900 per week to Father. This figure is based on the wage Father was paid while he worked as a chemist for a water company. Father testified that he secured this position through a temporary placement agency. Although it is not entirely clear whether the water company hired Father as only a temporary employee, if Father was a temporary employee, it is likely that he was not paid at the same rate that a regular employee would be paid at. Thus, the wage Father earned at the water company is likely not the most accurate reflection of the amount of money Father could be making.

The evidence introduced by Father suggests that his income should be imputed somewhere below $900. We have already determined that Father was fired from Eli Lilly due to his own misconduct. The circumstances surrounding his termination from Lilly, even though no criminal charges were filed, has surely impaired his employment potential, not just in the field of chemistry but in almost any potential area of employment.

Since being fired from Lilly, Father has applied for thirty-seven different jobs in a variety of areas including chemistry, teaching, fast food restaurants, and general retail stores. The trial court found that Father "has actively applied for employment ..." Brief of Appellant, Shawn C. Miller at tab A page 4. Based on the sheer number of jobs Father has applied for, it would appear that the job opportunities available to him might be limited.

The trial court also found that Father has remained "fairly consistent in paying a sizeable portion of his support obligation following the loss of his employment," and that Father "has paid support with little or no means of income." *Id.* This cuts in Father's favor by indicating that he is not taking lower paying jobs to avoid making his child support payments.

Father has secured employment with Fed Ex working seventeen and one half hours per week earning $10.77 per hour. Although I believe Father can obtain full-time employment, even if he did so, at the rate of $10.77 per hour, he would not come close to making $900 per week. Therefore, I dissent from the majority's conclusion that the trial court should impute an income of $900 per week to Father. On remand, I would suggest that Father's income should be imputed somewhere below

$900, but I would leave it up to the trial court to determine the exact figure.