James R. LEONE, Appellant–
Defendant,

v.

Linda KEESLING, Harold Lephart and
Priscilla Lephart, Hagar Anderson,
James Bridges, Earl and Evelyn
Haibe, Escar App, Mabel McGuffey,
Ruth Amick, and Dora Butrum, Ap-
pellees–Plaintiffs.

No. 18A04–0510–CV–626.

Court of Appeals of Indiana.

Dec. 21, 2006.

James R. Leone, New Smyrna Beach, FL, Appellant Pro Se.

Richard N. Bell, Arend J. Abel, Kelley J. Johnson, Cohen & Malad, LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

CRONE, Judge.

### Case Summary

James R. Leone appeals the trial court's denial of various motions and requests for attorney's fees, expenses, and contempt against Linda Keesling, and Priscilla Lephart, Hagar Anderson, James Bridges, Earl and Evelyn Haibe, Escar App, Mabel McGuffey, Ruth Amick, and Dora Butrum (collectively, "Appellees"). We affirm.

### Issue

We consolidate and restate Leone's issues as whether he has waived review of the trial court's rulings on various matters.

### Facts and Procedural History

A "big-picture" version of the facts giving rise to this appeal may be found in a companion case we decide today, *Keesling v. Beegle*, No. 18A04–0501–CV–10, 858 N.E.2d 980, 2006 WL 3742223 (Ind.Ct.App. Dec. 21, 2006). For purposes of this opinion, we note that

> in 1986, Paul Rubera founded Alpha Telcom, Inc. ("Alpha"), an Oregon company that sold, installed, and maintained telephones and business systems. *See S.E.C. v. Alpha Telcom, Inc.*, 187 F.Supp.2d 1250, 1254 (D.Or.2002). In 1997, Charles Tummino approached Rubera and suggested selling "payphones to individuals who would then enter into a service agreement with Alpha to install, service, and maintain the payphones." *Id.* Rubera consulted Alpha's attorney, Dan Lacy, who issued an opinion letter concluding that the arrangement would not constitute the sale of a security. Lacy sought an opinion from Florida attorney James Leone, who reached the same conclusion.

*Id.*, 858 N.E.2d at 982, 2006 WL 3742223.

In another companion case, we recited the following facts regarding Leone's involvement with the payphone program and the procedural history leading to this appeal:

> Leone understood that his legal opinion "[w]as to be used to give assurance to Alpha Telcom that they were engaged in a legal business. It was issued to Paul

Rubera, he specifically wanted his butt covered, you know, for criminal purposes as well as civil purposes. . . ." Leone's opinion addressed whether payphone sales constituted the sale of a security under the laws of Florida, Oregon, and the Eleventh and Ninth Circuits.

In October 1998, American Telecommunications Company, Inc. ("ATC"), was created to market and sell the payphone program to investors. Leone allowed his opinion letter to be included in the manual provided to payphone program sales representatives. At the request of Ross Rambach, Leone also sent the opinion letter to individual sales representatives "who said I want to see it from an attorney."

*Keesling v. Winstead,* No. 18A02–0601–CV–73, 858 N.E.2d 996, 998–99, 2006 WL 3742214 (Ind.Ct.App. Dec. 21, 2006) (footnotes and some quotation marks and citations omitted).

In February 2002, several Appellees filed a complaint alleging violations of the Indiana Securities Act and the Indiana Corrupt Business Influence Act (RICO), as well as theft, conversion, and common law fraud. Appellees added Leone as a defendant in their first amended complaint in August 2002. Leone unsuccessfully sought removal to federal court and dismissal for lack of personal jurisdiction. In March 2003, Appellees filed a second amended complaint, which Leone unsuccessfully sought to dismiss. In December 2003, Appellees filed a third amended complaint, which Leone unsuccessfully sought to dismiss. In May 2004, Appellees filed a fourth amended complaint, which Leone unsuccessfully sought to dismiss.

On May 3, 2005, Appellees moved for summary judgment against several defendants, including Leone, as to the merits of their claims and the issue of personal jurisdiction. On May 9, 2005, Leone moved for summary judgment and requested attorney's fees and expenses pursuant to Indiana Code Section 34–52–1–1 [1]. On June 7, 2005, Appellees designated evidence in opposition to Leone's motion, including affidavits from eight of the eleven Appellees, which alleged that a payphone program sales representative showed them Leone's opinion and the payphone program sales manual and that they relied on those documents in making the decision to invest in the payphone program. *See* Appellant's App. at 451–72 (affidavits of Earl Haibe, James Bridges, Mabel McGuffey, Ruth Amick, Escar App, and Linda Kees-

---

[1] Leone gave nine so-called "reasons" for awarding attorney's fees, of which the following is typical:

4H9. *The "Stop The Flood Of Strikesuits" Message Has To Flow Up From The Plaintiffs Who Feed At The Trough Of Shotgun Deceptions.* If enough Plaintiffs see news articles and hear stories from other investors about how the shady Fat Cat Big City Bullyboy "Broker Busters" lawfirms no longer give a contingency fee free ride to the crowded Courthouse Calendar, then the Tinsel Parade of Falsehood and Half Falsehood Strikesuits will cease. Instead, Plaintiffs will sue their lying lawyers and bring State Bar disciplinary actions for malpractice, solicitation/barristry/ambulance chasing, fraud on the Clients and Courts, and misuse of legal process. Only when the Courts JUST SAY NO to risk free shotgun litigation, will the intoxicating allure of "free money" from garbage strikesuits be shown up for the rotten drain it is on wallets of the Courts, taxpayers and innocent Defendants. If the Courts don't care enough to clean up the sewage clogging their dockets, the shady shysters like Mr. Bell and the monetary jackals of Cohen & Malad, the self proclaimed "Broker Busters", will come back again and again in lots of little towns.

Appellant's App. at 680. Leone also took Appellees' counsel to task for soliciting their clients and for a past disciplinary action against lead counsel.

ling).[2] Also on that date, Leone filed an amended affidavit and brief supporting summary judgment and attorney's fees. On June 20, 2005, Leone filed a reply in which he alleged, among other things, that Appellees' affidavits were "perjurious" and conflicted with deposition testimony given by Appellees and payphone program sales representatives. *Id.* at 777–78. On July 20, 2005, Leone filed a notice for expenses, fees, and contempt, in which he asserted that Appellees' affidavits were presented in bad faith and that therefore he was entitled to expenses, including attorney's fees, pursuant to Indiana Trial Rule 56(G). On July 22, 2005, the trial court held a hearing on Appellees' and Leone's summary judgment motions.

On August 5, 2005, the trial court issued an order granting summary judgment in favor of Leone on the issue of personal jurisdiction and denying Appellees' summary judgment motion. The trial court also denied Leone's request for fees, expenses, and contempt. The trial court's order reads in pertinent part:

> 4. Leone's briefs have caused the Court great difficulty in deciding this Motion. Leone seems more concerned with saying as many negative things as he can say about opposing counsel, rather than focusing on the issues' merits. The problem is further exacerbated by Leone's minimal compliance with Trial Rule 56(C). The Court has had to search his filings to determine what exact issues Leone is raising.

> . . . .

> 19. Leone requested that the Court order Plaintiffs to pay his expenses for defending himself in this action. The Court declines to do so for the following reasons.

> 20. The issue was not a "clear-cut" decision. Trial courts must determine personal jurisdiction issues on a case-by-case basis. They are fact-sensitive determinations. The Court cannot find that Plaintiffs litigated this matter in bad faith or that the claim was frivolous.

> 21. In the alternative, the Court declines to award fees and expenses and to find Plaintiffs' counsel in contempt due to Leone's continued pattern of uncivil, personal attacks on Plaintiffs' counsel. The Court cannot condone such behavior, which does not respect this Court or fellow counsel. One who wants fees, expenses, and contempt must make this request with "clean hands."

Appellant's App. at 107–08.

On September 6, 2005, Leone filed a motion to supplement summary judgment record in which he offered "newly obtained" deposition transcripts that he described as "conclusively rebutting Plaintiffs' argument and perjurious Affidavits that Plaintiffs received and relied on the Training Manual and [Leone's] opinion therein, and conclusively showing Plaintiffs' counsel's bad faith, etc. in suing Leone." Appellant's App. at 854.[3] Also on that date, Leone filed a motion to cor-

---

**2.** As Leone later observed, Appellees' counsel did not carefully proofread the affidavits. In each affidavit, paragraph 3 states that a payphone program sales representative "showed me the Sales Manual and a legal opinion by James Leone. I relied on these documents in making my decision to invest in the Payphone Program." A subsequent paragraph then specifies certain information that the customer never received before investing in the payphone program. The next paragraph says,

"Had I known of any of the facts stated in paragraph 3 above, I would not have purchased the Payphone Program."

**3.** In an accompanying affidavit, Leone stated that he "only recently was able to afford a copy of the ***ENCLOSED*** eight (8) Depositions transcripts (received August 20, 2005)[.]" Appellant's App. at 857.

rect error as to the trial court's denial of his request for fees, expenses, and contempt. On September 12, 2005, the trial court denied those motions. On March 3, 2006, the trial court certified the August 2005 order as a final appealable judgment pursuant to Indiana Trial Rule 56(C).

## Discussion and Decision

Initially, we note that Leone's idiosyncratic use of outline form and abbreviations, his fondness for boldface type and capital letters, his convoluted and hyperbolic writing style, and his citations to large swaths of his appellant's appendix without further explanation have needlessly frustrated our review of his appeal. Indeed, many pages of his brief appear to have been written in code, rather than in plain English, and seem calculated to cause the maximum expenditure of time and effort to read and comprehend.[4] It is extremely difficult to decipher Leone's arguments, let alone the relief he seeks.[5] As we stated in *Young v. Butts*, 685 N.E.2d 147 (Ind.Ct.App.1997),

> We demand cogent argument supported with adequate citation to authority because it promotes impartiality in the appellate tribunal. A court which must search the record and make up its own arguments because a party has not adequately presented them runs the risk of becoming an advocate rather than an adjudicator. *A brief should not only present the issues to be decided on appeal, but it should be of material assistance to the court in deciding those issues.* On review, we will not search the record to find a basis for a party's argument, nor will we search the authorities cited by a party in order to find legal support for its position.

*Id.* at 151 (emphasis added) (citations omitted). With these precepts in mind, we now address Leone's arguments, insofar as we can discern them and insofar as he has preserved them.

First, we address Leone's assertion that the trial court erred in denying his motions to dismiss. To the extent Leone argues that the denials were based on an improper interpretation of precedents regarding personal jurisdiction, our affirmance of summary judgment in his favor in *Keesling v. Winstead* renders that argument moot.[6] To the extent Leone alleges that

---

**4.** *See, e.g.,* Appellant's Br. at 32 ("Clearly controlling caselaw preventing PJ had been discussed in the MDs (and later in the August 5, 2005 SJ denying PJ), and in Pls. April 8, 2003 Response To Leone's MD For Lack Of PJ at pages 1–4 and 10–11, **App. 236–239, 245–246,** and in later Responses, **App. 276–278, 308–332,** and in Leone's March 13, and April 14, 2003 (**VERIFIED**) MD **App. 197–203, 249–253, 279–295,** and (**VERIFIED**) 'Briefs Supporting MD Leone ....'", pp. 5–9, **App. 209–213, 259–263,** and form of Order And Opinion p. 4–8, **App. 219–223, 270–274.**").

**5.** *See, e.g.,* Appellant's Br. at 55 ("Find (1) reversible (weight of law or fact) error as to PJ legal insufficiency of the Complaint prima facie (based on 8/05/06 Order, **App. 102–109**), or factual PC insufficiency (reverse **App. 114, 115, 116**), and/or (2) grossly reckless negligence as to such insufficiency and/or willful misconduct such that trial and appellate actions and appellate defense hereunder were initiated and/or maintained on a frivolous, or unreasonable, or groundless, or bad faith basis by Pls. and/or counsel on their behalf (Cohen & Malad, LLP and its four attorneys of record)."). Leone would do well to heed Alexander Pope's observation in *Essay on Criticism:* "Words are like leaves; and where they most abound, Much fruit of sense beneath is rarely found."

**6.** Our affirmance also moots Leone's argument that Appellees did not actually file a summary judgment motion. In his appellate brief, Leone baldly asserts that Judge Voorhees admitted in her summary judgment order "that her ignorance of the law was not excusable." Appellant's Br. at 30. The order says no such thing. *See* Appellant's App. at 102–08. Leone's misrepresentation and his disparagement of an experienced and consci-

the denials were based on factual misrepresentations by Appellees' counsel, we address this allegation later in our opinion.

██ Next, we consider Leone's contention that the trial court erred in denying his motion to supplement summary judgment record with Appellees' deposition transcripts, which supported his claim that Appellees' affidavits were perjurious. As far as we can tell, Leone cites no standard for reviewing this ruling, as required by Indiana Appellate Rule 46(A). *See* Ind. Appellate Rule 46(A)(8)(b) ("The [appellant's] argument must include for each issue a concise statement of the applicable standard of review; this statement may appear in the discussion of each issue or under a separate heading placed before the discussion of the issues."). It appears that after making an unsupported assertion of error on page 17 of his brief, Leone offers no substantive argument on this issue in the remaining forty-three pages. Accordingly, we find this argument waived.[7] *See Watson v. Auto Advisors, Inc.*, 822 N.E.2d 1017, 1027 (Ind.Ct.App. 2005) ("When parties fail to provide argument and citations, we find their arguments are waived for appellate review."), *trans. denied; see also* Ind. Appellate Rule 46(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on, in accordance with Rule 22."). Consequently, we need not address Leone's argument regarding the trial court's denial of his notice for expenses and contempt pursuant to Indiana Trial Rule 56(G). *See* Ind. Trial Rule 56(G) ("Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this

entious trial judge are not excusable. We remind him of his duty of candor toward the tribunal pursuant to Indiana Professional Conduct Rule 3.3. *See* Ind. Professional Conduct Rule 3.3(a) ("A lawyer shall not knowingly … make a false statement of fact or law to a tribunal[.]"). A century ago, our supreme court stated,

> Members of the bar are officers of the court. They are its assistants in the administration of justice, and so intimately related to our judiciary system, and so much a part of it, that thoughtful and self-respecting attorneys seldom allow themselves, however much they may feel aggrieved, to make public expression, in argument or otherwise, derogatory to the rectitude or good intentions of the bench....
>
> .... Counsel has need of learning the ethics of his profession anew, if he believes that vituperation and scurrilous insinuation are useful to him or his client in presenting his case. The mind, conscious of its own integrity, does not respond readily to the goad of insolent, offensive, and impertinent language. It must be made plain that the purpose of a brief is to present to the court in concise form the points and questions in controversy, and by fair argument on the facts and law of the case to assist the court in arriving at a just and proper conclusion. A brief in no case can be used as a vehicle for the conveyance of hatred, contempt, insult, disrespect, or professional discourtesy of any nature for the court of review, trial judge, or opposing counsel. Invectives are not argument, and have no place in legal discussion, but tend only to produce prejudice and discord.

*Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Muncie & Portland Traction Co.*, 166 Ind. 466, 467–68, 77 N.E. 941, 941–42 (1906). More recently, the court observed that the Indiana Rules of Professional Conduct "establish minimum standards of ethics and competence for all attorneys. Such rules do not permit an attorney to engage in unethical or obstreperous conduct simply because he is acting on his own behalf." *Matter of Gemmer*, 566 N.E.2d 528, 532 (Ind.1991).

7. In *Keesling v. Beegle*, we affirmed the trial court's refusal of an affidavit submitted by Appellees after the court heard and ruled on the defendants' motions for summary judgment. *See id.* 858 N.E.2d at 985, 2006 WL 3742223.

rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of these affidavits caused him to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.").

We also find that Leone has waived any claim regarding the trial court's denial of his motion to correct error. He mentions the ruling on page 17 of his brief and again on page 57, with no substantive argument to be found in between.

We likewise conclude that Leone has waived his due process argument regarding the unavailability of attorney's fees for defendants under Indiana's Securities and RICO Acts. "It is axiomatic that an issue cannot be raised for the first time on appeal." *Harlan Bakeries, Inc. v. Muncy,* 835 N.E.2d 1018, 1040 (Ind.Ct. App.2005). Leone's tirades against Appellees' lawsuit at the trial court level do not even begin to approach a cogently reasoned due process argument. *See, e.g.,* Appellant's App. at 679 ("Indiana does not assess attorneys fees against the lawyers who knowingly participate in the bloody money sport of shotgunning multiple innocent Defendants with multiple unfounded claims based on multiple falsehoods and half falsehoods."). The same may be said for his harangues on appeal. *See, e.g.,* Appellant's Br. at 53 ("It is Indiana sanctioned economic warfare with a 'tilt'. It could be 'uncivilly' criticized as a form of statutory authorized extortion by racketeers with Bar Numbers, licenses to defraud because there is no ISA/RICO penalty for fraudulent suits.").

This brings us to the centerpiece of Leone's claims, that the trial court erred·in denying his request for attorney's fees

pursuant to Indiana Code Section 34–52–1–1. "Generally, litigants must pay their own attorney's fees in the absence of a statute, stipulation, or agreement providing otherwise." *Buschman v. ADS Corp.,* 782 N.E.2d 423, 431 (Ind.Ct.App.2003). Indiana Code Section 34–52–1–1 states in pertinent part:

(b) In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

"A claim is 'frivolous' if it is established that it was brought for the purpose of an improper motive such as·harassment or if legal counsel is unable to make a good faith, rational argument on the merits of the case." *Buschman,* 782 N.E.2d at 432. "A claim is unreasonable if no reasonable attorney would consider it justified or worthy of litigation under the totality of the circumstances, including the law and facts known at the time the claim is filed." *Id.* "[W]e have considered a claim 'groundless' only if no facts exist which support a legal claim presented by the losing party." *Id.*

Leone asserts that the trial court's summary judgment ruling in his favor

showed a good faith and rational argument could NOT be made to support [Plaintiffs' personal jurisdiction] claims under the law, which counsel had a duty to determine, which Leone's [motions to dismiss] made clear. All of that is proven by the Second Amended [complaint] adding intentionally false allegations

about receiving Leone's opinion, and by counsel getting [Plaintiffs] to sign perjurious April 2005 [summary judgment] Affidavits contradicting their June and July 2004 Deposition Admissions that they never received or relied on Leone's nine page legal opinion buried in the 142 page Sales Agent Training Manual.

Appellant's Br. at 38. We first observe that "an award of attorney's fees is not justified merely because a party loses on the merits"—or, as in this case, on a jurisdictional issue. *Buschman*, 782 N.E.2d at 432. Second, we have already determined that Leone waived his argument regarding his belated submission of Appellees' deposition transcripts. In other words, the transcripts were not properly before the trial court.

■ Leone goes on to state that he "raised legal and factual issues given peremptory dismissal. The only bases for denying attorneys fees, etc. were to the effect the Court was unable to find the suit frivolous or in bad faith, but if it was, Leone deserved no remedy because of his loud outcry about the rape." Appellant's Br. at 39. Leone's comparison of a civil lawsuit to a rape is patently offensive and crosses far over the line separating vigorous advocacy from inflammatory invective. In *Clark v. Clark*, 578 N.E.2d 747 (Ind.Ct. App.1991), we stated that "[f]or the use of impertinent, intemperate, scandalous, or vituperative language in briefs on appeal impugning or disparaging this court, the trial court, or opposing counsel, we have the plenary power to order a brief stricken

from our files and to affirm the trial court without further ado." *Id.* at 748. In that case, we declined to do so because we did not want to impose "undue punishment" on the appellant "for her counsel's unprofessional conduct." *Id.* at 749.

Leone, however, is a licensed attorney who has represented himself throughout these proceedings. The trial court patiently endured Leone's nearly indecipherable filings and motions filled with heated rhetoric against "shotgun" lawsuits and Appellees' counsel. In return for this forbearance, the trial court has been rewarded by Leone with a request for admonishment or referral for disciplinary action. As mentioned elsewhere in this opinion, Leone has continued his scorched-earth campaign on appeal. Enough is enough. It is one thing to argue cogently and calmly that Appellees' counsel was less than candid and that the trial court made erroneous decisions. It is quite another to compare Appellees' lawsuit to a rape and to suggest that the trial court is ignorant of the law and deserves to be sanctioned. We therefore strike Leone's argument, such as it is, on the issue of attorney's fees and summarily affirm the trial court.[8]

We would be remiss, however, if we did not acknowledge that we are deeply troubled by Appellees' counsel's submission of affidavits that are at least inconsistent with, and often contradicted by, Appellees' deposition testimony regarding their reliance on Leone's opinion letter, although that testimony is not properly a part of the record.[9] We are likewise troubled by Ap-

---

**8.** Given our resolution of this issue, we need not address Appellees' argument that Leone is not entitled to attorney's fees because he represented himself. *Compare Miller v. W. Lafayette Cmty. Sch. Corp.*, 665 N.E.2d 905, 907 (Ind.1996) (holding that attorney father representing child in suit brought under Individuals with Disabilities Education Act was not entitled to fees under Act's fee-shifting provi-

sion), *with Ziobron v. Crawford*, 667 N.E.2d 202, 208 (Ind.Ct.App.1996) (distinguishing *Miller* in holding that pro se attorney was entitled to fees for defending against alleged malicious prosecution under Fair Debt Collection Practices Act), *trans. denied* (1997).

**9.** For example, Escar App testified that she was not given Leone's opinion letter and that she did not rely upon any legal opinion prior

pellees' counsel's inclusion of extra-record deposition testimony in the appendix, despite the signed verification that the documents therein "are accurate copies of parts of the Record on Appeal."[10] Also of concern are Leone's allegations in his motion to correct error that Appellees' counsel "fabricated" jurisdictional facts in their various complaints. *See* Appellant's App. at 889 ("The Amended Complaint dated August 2002 ... falsely states repeatedly that Defendant Leone by means of his legal opinion 'conducted business in Indiana' as a sales 'agent of ATC/Alpha' as to the payphones and 'made sales' to Plaintiffs or 'assisted sales' to Plaintiffs. By the time of the May 2004 Fourth Amended Complaint the fabricated details actually had expanded to the effect that Leone 'acted as an agent of the issuer and conducted business in Indiana', 'made sales in Indiana', or 'materially aided sales' and that 'all Plaintiffs relied on the legal opinion'.") (citations omitted). The trial court did not find that Appellees' counsel litigated in bad faith, and the record before us is insufficient for us to determine otherwise. That said, we find little encouragement in Appellees' counsel's evasiveness and silence in response to Leone's strident accusations.[11] We do not have jurisdiction over disciplinary matters, however, and we leave it to the Indiana Disciplinary Commission to determine whether Appellees' counsel committed misconduct.

Affirmed.

KIRSCH, C.J., and BAILEY, J., concur.

to purchasing a payphone. Appellant's App. at 874, 875. Priscilla Lephart testified that she did not remember a legal opinion written by Leone. *Id.* at 863. Earl Haibe testified that he did not review a legal opinion written by Leone before he bought a payphone. *Id.* at 867. Evelyn Haibe testified that she did not recall Leone's name. *Id.* at 871.

10. We therefore grant Leone's motion to strike as to Appellees' references to these depositions on pages 14 and 15 of their appellate brief, as well as to the verification of their appendix. We deny Leone's motion to strike as to Appellees' statement on page 8 of their brief that "at least two plaintiffs who were Indiana residents saw and relied upon Leone's opinion before he supposedly withdrew it." Appellees' Br. at 8 (citing Appellees' App. at 115–17). The documents to which Appellees refer are contracts that Haibe, Anderson, and Keesling signed *after* Leone purportedly withdrew his opinion; it is possible that they saw Leone's opinion *before* it was withdrawn.

11. *See, e.g.,* Appellees' Br. at 12 ("[T]he only thing Leone disputes is that Plaintiffs ever saw [his] opinion, a factual dispute that he is not entitled to have resolved in his favor on summary judgment. The Plaintiffs' Affidavits[ ] state that the salesman 'showed me the Sales Manual and a legal opinion by James Leone. I relied on these documents in making my decision to invest in the Payphone Program.' "). This statement fails to acknowledge that the plaintiffs' affidavits contradict their deposition testimony.