## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 19 2015, 9:22 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Edward J. Calderaro | Jill S. Swope |
| Sachs & Hess, P.C. | Sterba & Swope, LLP |
| St. John, Indiana | Schererville, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Marriage of:<br><br>John Mikicich,<br>*Appellant,*<br><br>v.<br><br>Claudia Mikicich,<br>*Appellee.* | May 19, 2015<br><br>Court of Appeals Case No.<br>45A05-1407-DR-355<br><br>Appeal from the Lake Circuit Court;<br>The Honorable Elizabeth F. Tavitas,<br>Judge;<br>45D03-1209-DR-739 |

**May, Judge.**

John Mikicich (Husband) appeals portions of the decree dissolving his marriage to Claudia Mikicich (Wife).

We affirm.

## Facts and Procedural History

Husband and Wife were married in 1990, they separated in 2011, and their marriage was dissolved in 2014. They have two children, one of whom is emancipated. Husband had worked for ArcelorMittal since 1978. Wife stayed at home to raise the children and later worked part-time for a church. Husband was fired in 2012 after he stole copper from his employer. He was charged with felony theft and entered a plea of guilty to misdemeanor theft. He was allowed to keep his pension, and he received accrued vacation and sick pay totaling $25,000. He put that money in his 401(K) account. Husband received one call-back for a new job he applied for, but he failed a drug test and was not hired.

The trial court found Husband's loss of income was due to his intentional misconduct, and it attributed to Husband an annual income of $95,000. It awarded to Wife sixty percent of the assets acquired during the marriage. Additional facts will be provided as necessary.

## Discussion and Decision

The record does not reflect either party asked the trial court for specific findings of fact and conclusions of law.[1] Instead the trial court entered specific findings and conclusions *sua sponte*. The same standard of review applies when the trial court enters specific findings and conclusions gratuitously or at the request of a party, "with one notable exception." *Breeden v. Breeden*, 678 N.E.2d 423, 425 (Ind. Ct. App. 1997). When the trial court enters such findings *sua sponte*, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. *Id*. We may affirm a general judgment on any theory supported by the evidence adduced at trial. *Id*.

Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time. *D.C. v. J.A.C.*, 977 N.E.2d 951, 956 (Ind. 2012). As they are "enabled to access [sic] credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests

---

[1] Husband offers a standard of review articulated in *Bandini v. Bandini*, 935 N.E.2d 253, 258 (Ind. Ct. App. 2010). There, pursuant to a husband's written request, the trial court entered specific findings of fact and conclusions of law. As neither Husband nor Wife requested findings herein, the *Bandini* standard therefore does not apply to the case before us.

of the involved children." *Id*. (quoting *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011)). Appellate courts "are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence." *Id*. at 956-57 (quoting *Brickley v. Brickley*, 247 Ind. 201, 204, 210 N.E.2d 850, 852 (1965)).

[7]     The standard of review is not *de novo*; under these circumstances, appellate courts employ a clear-error standard. *Id*. at 957. Consequently, on appeal it is not enough that the evidence might support some other conclusion. It must positively require the conclusion contended for by appellant before there is a basis for reversal. *Id*. at 957. We will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment. *Id*.

### Imputed Income

[8]     The trial court properly imputed income to Husband. The Indiana Child Support Guidelines provide that if a parent is voluntarily unemployed or underemployed, child support shall be determined based on potential income. Ind. Child Support Guideline 3(A)(3). "A determination of potential income shall be made by determining employment potential and probable earnings level based on the obligor's work history, occupational qualifications, prevailing job opportunities, and earning levels in the community." *Id.* The purposes behind determining potential income are to "discourage a parent from taking a lower paying job to avoid the payment of significant support" and to "fairly allocate

the support obligation when one parent remarries and, because of the income of the new spouse, chooses not to be employed." Child Supp. G. 3 cmt. 2(c).

[9] A trial court has wide discretion with regard to imputing income to ensure the child support obligor does not evade his or her support obligation. *Miller v. Sugden*, 849 N.E.2d 758, 761 (Ind. Ct. App. 2006), *trans. denied*. But child support orders cannot be used to "force parents to work to their full economic potential or make their career decisions based strictly upon the size of potential paychecks." *Id.* (quoting *In re E.M.P.*, 722 N.E.2d 349, 351-52 (Ind. Ct. App. 2000).

[10] If a parent's intentional misconduct directly results in a reduction of his or her income, no corresponding decrease in his or her child support obligation should follow, because such misconduct results in 'voluntary underemployment' according to the Child Support Guideline 3(A)(3), and the income the parent was earning before that misconduct[2] should be imputed to that parent. *Id.*

---

[2] Husband also argues the trial court erred when it "imputed income based upon the actions of the parties that took place prior to the filing." (Amended Appellant's Br. at 10.) He relies on *Boone v. Boone*, 924 N.E.2d 649, 653 (Ind. Ct. App. 2010), where "the dispositive question" was whether an Indiana court "has authority to reach into an intact marriage" and enter a support order that covers a time before the filing of the dissolution decree. (Footnote omitted.) We concluded it does not. *Id.* at 655.

Husband broadly characterizes *Boone* as holding "reaching back into an intact marriage is outside the authority of the court," and asserts the trial court did so when it "reach[ed] back prior to the filing of dissolution paperwork for the purposes of imputing income to [Husband]." (Amended Appellant's Br. at 11.) *Boone* does not stand for the proposition that a trial court never has authority to "reach back into an intact marriage" for any reason, and determining income for imputation purposes is one situation where a trial court may do so. *See, e.g.*, *Macher v. Macher*, 746 N.E.2d 120, 122 (Ind. Ct. App. 2001) (income properly imputed based on earnings before dissolution).

[11] In *Carmichael v. Siegel*, 754 N.E.2d 619 (Ind. Ct. App. 2001), Siegel petitioned for a modification of child support after his license to practice law was suspended because he intentionally deceived a bankruptcy court. We noted that when a criminal act or its consequences is the primary cause of an obligor-parent's failure to pay child support, abatement of the obligation is not warranted. *Id.* at 632. We acknowledged Siegel had not been convicted of a crime, but we "perceive[d] no reason to limit the rationale of [*Holsapple v. Herron*, 649 N.E.2d 140 (Ind. Ct. App. 1995) and *Davis v. Vance*, 574 N.E.2d 330, 331 (Ind. Ct. App. 1991)] [*both disapproved on other grounds by Clark v. Clark*, 902 N.E.2d 813 (Ind. 2009)] to only those cases where willful misconduct has resulted in a criminal conviction." *Id.* at 633. We remanded for the trial court to impute to Siegel the income he was earning before he was suspended from practicing law. *Id.* at 633

[12] Husband relies on *Miller*, where we reached the opposite result. There, we determined the trial court should not have imputed income to Miller after he was fired for "unauthorized removal" of chemicals from his workplace. 849 N.E.2d at 759. Miller argued the circumstances leading to his termination did not rise to the level of intentional misconduct that would justify a finding of voluntary underemployment, and we noted there was no indication criminal charges were filed. Miller's termination was the result of his own misconduct, but it did not "rise[] to the level of intentional deceit present in *Carmichael*. Therefore, we find *Carmichael* to be distinguishable." *Id.* at 761.

[13] The case before us is more like *Carmichael*,[3] and the trial court's imputation of income to Husband was not error. As Husband entered a plea of guilty to misdemeanor theft, we decline to hold his misconduct was not "intentional."

### *Award of Tax Exemptions*[4]

[14] 26 U.S.C. § 152(e) (2000) automatically grants a dependency exemption to a custodial parent of a minor child but permits an exception where the custodial parent executes a written waiver of the exemption for a particular tax year. A trial court under certain circumstances may order the custodial parent to sign a waiver of the dependency exemption. *Sims v. Sims*, 770 N.E.2d 860, 866 (Ind. Ct. App. 2002). The Child Support Guidelines were developed without taking into consideration the award of the dependency exemption. *Id*. Courts are instead to review each case on an individual basis. *Id*. (citing Ind. Child Support Guideline 6, cmt. ("Tax Exemptions")).

[15] Husband, as the noncustodial parent, bears the burden to show the tax consequences to each parent of transferring the exemption *and how such a transfer would benefit the child*. *Id*. (emphasis added). Husband offers no

---

[3] We acknowledge the authority Husband offers to the effect "one purpose of potential income is to discourage a parent from taking a lower paying job to avoid the payment of significant support," and another is to fairly allocate the support obligation when one parent remarries and, because of the income of the new spouse, chooses not to be employed. *J.M. v. D.A.*, 935 N.E.2d 1235, 1240 (Ind. Ct. App. 2010) (quoting Ind. Child Supp. G. 3(A), Cmt. 2), *reh'g denied*. The record does not reflect Husband remarried or was trying to avoid paying support, but Husband offers no authority to support the premise income may not be imputed in any other situation, and we decline to so hold.

[4] In the heading for this section of his brief, Husband also asserts the trial court erred by "not ordering [Wife] to sign the IRS waiver," (Amended Appellant's Br. at 11), but there is no discussion, or even mention, of "the IRS waiver" in the body of his argument. We are therefore unable to address that allegation of error.

argument regarding the tax consequences to either parent of transferring the exemption or how transferring the exemption would benefit the child. Nor does he direct us to anything in the record indicating he made any such showing before the trial court. Therefore, we cannot say the trial court abused its discretion in its award of tax exemptions.[5]

### Child's Health Insurance

[16] Husband asserts the trial court erred in ordering him to "pay the deductible on any health insurance policy and ordering him to purchase same with[6] giving him a credit on the child support worksheet." (Amended Appellant's Br. at 12) (footnote added). Husband has waived that allegation of error on appeal.

[17] There is no mention in Husband's Statement of the Case or Statement of the Facts of any trial court order that he purchase such a policy and pay the deductible. Nor does he, in the Argument section of his brief, direct us to anything in the record regarding such an order. We therefore decline to address that allegation of error. *See, e.g., Johnson v. State*, 675 N.E.2d 678, 682 (Ind. 1996) (declining to address various conflict of interest claims because Johnson

---

[5] We remind Husband that when parties do not provide cogent argument and citation to authority, their arguments are waived for appellate review. *See, Leone v. Keesling*, 858 N.E.2d 1009, 1014 (Ind. Ct. App. 2006), *trans. denied; see also* Ind. Appellate Rule 46(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on, in accordance with Rule 22.").

[6] The substance of Husband's argument suggests this word should be "without." (See Amended Appellant's Br. at 12-13: "[t]he court abuses its discretion here in using a high imputed income as the base for the calculation, and then in the same order, using the extremely low actual income *as the basis for rejecting the credit* for payment of health insurance premiums." (emphasis added).)

did not provide supporting citations to the record). "On review, this Court will not search the record to find grounds for reversal. We therefore address only those claims properly supported." *Id.* (citation omitted).

[18] Notwithstanding the waiver, we cannot find error. Wife does direct us to an order Husband buy a policy and pay the deductible, but it is not apparent the order has any present effect. Included in the decree was a provision that if the parties' younger daughter was still in school "when she loses group health insurance coverage, [Husband] shall purchase individual health coverage [and] . . . shall be responsible for the deductible each year." (App. at 13.) It is not apparent that situation has arisen, and Wife notes that if it does, Husband could presumably seek a modification of support.

### *Additional Expenses for Child*

[19] Husband next asserts the trial court erred by ordering him to "pay 77% of additional expenses of the child for items such as school costs, ACT/SAT registration fees, college application fees, extracurricular costs, [and] social event expenses." (Amended Appellant's Br. at 13.) Nowhere in Husband's Statement of the Case, Statement of the Facts, or Argument section on this issue in his brief or reply brief does he indicate where any such order might be found in the record or what it specifically says. As explained above, Husband has therefore waived that allegation of error. *See, e.g., Johnson*, 675 N.E.2d at 682 (declining to address claims because Johnson did not provide citation to the record).

[20]    Notwithstanding the waiver, we note Husband's assertion the child is home schooled and has not yet entered high school. It therefore does not appear the order has any present effect. The parties did, however, stipulate in their partial marital settlement agreement that the contested issues to be addressed at the final hearing would include a determination of who should be responsible for "extra-curricular expenses, schooling expenses, ACT/SAT testing costs, college application fees, and Prom/Homecoming expenses." (App. at 22.)

### Attorney's Fees

[21]    Indiana Code Section 31-15-10-1(a) provides a trial court in a dissolution proceeding "periodically may order a party to pay a reasonable amount . . . for attorney's fees . . ., including amounts for legal services provided and costs incurred before the commencement of the proceedings or after entry of judgment." We review for an abuse of discretion a decision on attorney's fees in connection with a dissolution decree. *Crider v. Crider*, 15 N.E.3d 1042, 1053 (Ind. Ct. App. 2014), *trans. denied.* When deciding whether to award attorney's fees, trial courts must consider the relative resources of the parties, their economic condition, the ability of the parties to engage in gainful employment and earn adequate income, and other factors that bear on the reasonableness of the award. *Id.*

[22]    The legislative purpose behind Indiana Code Section 31-15-10-1 is to ensure that a party in a dissolution proceeding is able to retain representation when he or she would otherwise be unable to afford an attorney. *Id.* When one party is

in a superior position to pay fees over the other party, an award of attorney fees is proper. *Id.*

[23] The trial court awarded Wife attorney's fees based on "the circumstances in this cause of action and the disparity of income." (App. at 17.) Husband asserts the award was error because "[t]he only disparity of income is that imputed by the court's abuse of discretion in its imputation of income to [Husband]." (Amended Appellant's Br. at 16.) As there was no abuse of discretion in the imputation of income, we cannot say the award of attorney's fees was error.[7]

### Presumption of Equal Distribution

[24] The division of marital property is within the sound discretion of the trial court, and we will reverse only for an abuse of discretion. *Love v. Love*, 10 N.E.3d 1005, 1012 (Ind. Ct. App. 2014). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law or disregards evidence of factors listed in the controlling statute. *Id.* When we review a claim that the trial court improperly divided marital property, we must consider only the evidence most favorable to the trial court's disposition of the

---

[7] In his reply brief, Husband notes a party's ability to pay attorney's fees "is a factor to consider." (Appellant's Reply Br. at 5.) He then asserts the trial court "did not make a finding that it considered [Husband's] ability to pay [Wife's] attorney fees." (*Id.*) Grounds for error may be framed only in an appellant's initial brief and if addressed for the first time in the reply brief, they are waived. *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005). We accordingly decline to address that allegation of error.

property. *Id.* Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court. *Id.*

[25] The trial court awarded sixty per cent of the assets acquired during the marriage to Wife and forty per cent to Husband. An equal division of marital property is presumed to be just and reasonable, but this presumption may be rebutted if a party presents relevant evidence regarding the following factors: (1) each spouse's contribution to the acquisition of property; (2) acquisition of property through gift or inheritance prior to the marriage; (3) the economic circumstances of each spouse at the time of disposition; (4) each spouse's dissipation or disposition of property during the marriage; and (5) each spouse's earning ability. *Id.* (citing Ind. Code § 31-15-7-5).

[26] When ordering an unequal division, the trial court must consider all of the factors set forth in the statute, *id.*, but the court is not required to explicitly address each factor. *Id.* However, on review we must be able to infer from the trial court's findings that all the statutory factors were considered. *Id.* A party who challenges the division of marital property must overcome a strong presumption that the court considered and complied with the applicable statute. *Id.* at 1012-13. Thus, we will reverse a property distribution only if there is no rational basis for the award. *Id.* at 1013.

[27] We can infer from the trial court's findings that all the statutory factors were considered, and the trial court set forth a rational basis for its decision to deviate

from an equal division. The trial court noted the value and division of certain major marital assets to which the parties stipulated in their partial marital settlement agreement. It addressed Husband's earning history and noted the parties had agreed Wife would stay home and raise the children. It noted Husband's deposit into his own 401(K) account of the vacation and sick pay he received after he was fired, and it noted the family's lost income after he was fired and the expenses incurred in the defense of the criminal charges against him. It found Husband persuaded Wife to waive her survivorship interest in Husband's pension so he could have a greater monthly benefit.

[28] The trial court recited the statutes that govern property division, establish the presumption of equal division, and explain how it may be rebutted, and it explicitly stated it had considered "the statutory factors and the facts of this case." (App. at 16.) Husband has not rebutted the strong presumption that the court considered and complied with the applicable statute, and we cannot say there was no rational basis for its unequal division of the marital property.

## *Conclusion*

[29] The trial court did not err in imputing income to Husband, awarding tax exemptions to Wife, directing Husband to purchase health insurance and pay Child's expenses should certain circumstances arise, awarding Wife attorney's fees, or dividing the marital estate unequally. We accordingly affirm the decision of the trial court.

[30] Affirmed.

Barnes, J., and Pyle, J., concur.